[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13643

_____

D.C. Docket No. 1:12-cr-00070-WSD-RGV-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERTO GARZA-MENDEZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 15, 2013)

Before MARTIN and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

FAY, Circuit Judge:

---

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

Roberto Garza-Mendez, a Mexican citizen who pled guilty to unlawful re-entry into the United States by an aggravated felon, in violation of 8 U.S.C. § 1326(a) and (b)(2), appeals the calculation of his sentence.  The district judge applied an 8-level increase under U.S.S.G. § 2L1.2(b)(1)(C) (2011) for Garza-Mendez's Georgia-family-violence-battery conviction, declined to give him a variance or departure based on cultural assimilation, and imposed a 3-year term of supervised release, including a special condition requiring Garza-Mendez to report his address from Mexico after he is deported.  We affirm.

## I. BACKGROUND

Garza-Mendez's deportation from the United States resulted from his guilty plea and conviction under a Georgia-family-violence-battery statute for striking his girlfriend, the mother of his three minor children, causing visible bodily injury. On August 30, 2007, he was sentenced to confinement for 12 months; the remainder of his sentence was probated after he had served 30 hours in prison. Garza-Mendez was deported from the United States to Mexico on January 25, 2011.

In February 2011, he illegally re-entered this country and subsequently was arrested for striking an unattended vehicle and driving without a driver's license on January 27, 2012.  Following confinement in local custody for these offenses, Garza-Mendez was released to the custody of the Bureau of Immigration and

2

Customs Enforcement on outstanding warrants for failure to appear and probation violation on February 7, 2012. He was transferred to the United States Marshals Service on March 9, 2012. A grand jury indicted him for illegal re-entry into the United States on March 6, 2012.

The only sentence calculation by the Probation Office in his Pre-Sentence Investigation Report to which Garza-Mendez objected was the addition of 8 levels under U.S.S.G. § 2L1.2(b)(1)(C) for his previous conviction of an aggravated felony, the family-violence battery.[1] He argued his family-violence-battery conviction was not an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C), because he was not sentenced to at least a year of imprisonment as required by 8 U.S.C. § 1101(a)(43)(F).

Following Garza-Mendez's guilty plea to the family-violence battery, Gwinnett County Judge Matthew Robins sentenced Garza-Mendez on August 30, 2007, to "12 months" of "confinement in the Gwinnett County Comprehensive Correctional Complex," credited him "30 hours" for time served, permitted the remainder of the sentence to be served on probation, and fined him "$350.00." R1-

---

[1] Garza-Mendez had a base offense level of 8 under U.S.S.G. § 2L1.2(a); the addition of 8 levels under U.S.S.G. § 2L1.2(b)(1)(C) yielded an adjusted offense level of 16. The subtraction of 3 levels for Garza-Mendez's acceptance of responsibility resulted in a total offense level of 13. For various criminal and traffic offenses (driving drunk or without a license, speeding, driving aggressively), Garza-Mendez's criminal history category was III. His resulting Sentencing Guidelines custody range was 18 to 24 months, a fine of $3,000 to $30,000, and supervised release of 1 to 3 years.

14 Ex. 1.  Following his apprehension for illegal re-entry into the United States in January 2012, Garza-Mendez sought a clarification of his sentence.  On April 17, 2012, Gwinnett County Judge Pamela D. Smith issued a clarification order:

> Having reviewed the Court's August 30, 2007 sentence in the above-styled case, the Court finds that it is appropriate to clarify what sentence the Court imposed.  The Court sentenced Defendant to twelve (12) months of probation with the first thirty (30) hours to be served in custody.  The Court gave Defendant credit for thirty (30) hours that Defendant had already served.  The Court did not sentence Defendant to twelve (12) months of incarceration.

R1-14 Ex. 2.

At his June 26, 2012, federal sentencing for illegal re-entry into the United States of a previously deported alien, Garza-Mendez argued the state-court clarification order showed he had not been sentenced to 12 months of imprisonment for his family-violence-battery crime.  Consequently, he contended he should not have an 8-level increase under U.S.S.G. § 2L1.2(b)(1)(C) for a crime, where the sentence was not 12 months of confinement.  The district judge denied this objection, denied his request for downward departure under U.S.S.G. § 2L1.2 cmt. n.8 for cultural assimilation, and imposed a reporting requirement from Mexico as a special condition of his supervised release.  He sentenced Garza-Mendez to the middle of the Sentencing Guidelines range: 20 months of imprisonment, 3 years of supervised release, and a $100 mandatory special assessment.  R1-17 at 1-4.  Following imposition of his sentence, Garza-Mendez

4

objected to the application of U.S.S.G. § 2L1.2(b)(1)(C), the failure to depart for cultural assimilation, and the special condition of his supervised release requiring him to report from Mexico.  He pursues these issues on appeal.

## II. DISCUSSION

A. Application of U.S.S.G. § 2L1.2(b)(1)(C)

Under U.S.S.G. § 2L1.2(b)(1)(C), "[i]f the defendant previously was deported" and had "a conviction for an aggravated felony," the sentencing judge must increase the sentence "by **8** levels." *Id.*  An aggravated felony is a crime of violence for which the term of imprisonment is at least one year.  8 U.S.C. § 1101(a)(43)(F).  We have held "an aggravated felony is defined by the sentence actually imposed." *United States v. Guzman-Bera*, 216 F.3d 1019, 1020 (11th Cir. 2000) (per curiam); *see United States v. Christopher*, 239 F.3d 1191, 1193, 1194 (11th Cir. 2001) (recognizing a misdemeanor crime of violence qualifies as an "aggravated felony" under the Sentencing Guidelines; "felony status is not an absolute requirement for the use of the 'aggravated felony' enhancement").  A term of imprisonment includes "the period of incarceration or confinement ordered by a court of law *regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.*"  8 U.S.C. § 1101(a)(48)(B) (emphasis added); *see Guzman-Bera,* 216 F.3d at 1021 ("A reference to a term of

5

imprisonment is deemed to include the period of incarceration regardless of any suspension of either the imposition or execution of that sentence.").

On appeal, "Garza-Mendez does not contend that [his state] conviction is not a 'crime of violence' under 18 U.S.C. § 16"; instead, he argues that he was not sentenced to an imprisonment term of at least one year. Appellant's Br. at 13. He bases his argument on another Gwinnett County judge's clarification order stating he had not been sentenced to 12 months of incarceration. In overruling Garza-Mendez's objection at sentencing, the district judge found the clarification "[wa]s simply the judge's stating what actually she intended to happen, but *it doesn't impact the actual imposition of the sentence that was imposed*." R3 at 150-51 (emphasis added). "We review questions of law with respect to the district court's application of the Sentencing Guidelines *de novo*." *United States v. Aguilar-Ortiz*, 450 F.3d 1271, 1272 (11th Cir. 2006).

There are three problems with the argument presented by Garza-Mendez concerning the state-court judge's subsequent clarification order. First, the state judge, who issued the clarification order, was not the sentencing judge. Second, the state judge did nothing more than review Garza-Mendez's August 30, 2007, sentence to issue the clarification order. Third, the August 30, 2007, sentence could not be any clearer—Garza-Mendez was sentenced to "12 months" of "confinement," despite the subsequent state judge's interpretation. *See* Appendix.

6

This was the sentence imposed irrespective of any suspension of the confinement term. *See* 8 U.S.C. § 1101(a)(48)(B). [2]

Garza-Mendez did not challenge his 12-month-confinement sentence, when it was imposed in 2007. *Five years later*, his counsel requested a clarification from a different state-court judge in April 2012, prior to his June 26, 2012, federal sentencing for illegal re-entry into the United States. The substantial period between the imposition of Garza-Mendez's original sentence and the clarification of that sentence by a different state judge, strategically timed to precede and influence his federal sentence for illegal re-entry into the United States, presents an

---

[2] The dissent focuses solely on a different state-court judge's interpretation of Garza-Mendez's sentencing order *five years after it was imposed* and proclaims this subsequent interpretation should be followed based on comity. But Garza-Mendez's crime of illegal re-entry into the United States put him in federal court, where his federal sentence depends on the original confinement sentence *as imposed*, regardless of any suspension of the confinement term. *See* 8 U.S. C. § 1101(a)(48)(B); *Guzman-Bera*, 216 F.3d at 1021. The clarification order is flatly contrary to the sentencing order. *See* Appendix. Nor does the subsequent state judge rely upon any consultation with the sentencing judge.

We do not suggest the subsequent state judge was attempting to apply federal law in the clarification order. As the district judge recognized, the subsequent Gwinnett County judge may think that is what the sentencing judge meant to do, but that is not what he did. Comity is respect for the law of another jurisdiction, but not blind adherence! *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987) ("'"Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.'" (quoting *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895))); *see also Wright v. West*, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring) ("We have always held that federal courts, even on habeas, have an independent obligation to say what the law is."). This case is not about comity; it concerns applying the correct federal law to Garza-Mendez's federal sentence for illegal re-entry into the United States.

7

issue of first impression in our circuit.[3]  In precursor opinions, we have recognized

"[w]ords in federal statutes reflect federal understandings, absent an explicit

statement to the contrary"; we decided "the term of imprisonment described in §

1101(43) . . . *include[s] all parts of a sentence of imprisonment from which the*

*sentencing court excuses the defendant*, even if the court itself follows state-law

usage and describes the excuse with a word other than 'suspend.'"  *United States v.*

*Ayala-Gomez*, 255 F.3d 1314, 1319 (11th Cir. 2001) (per curiam) (citing *Dickerson*

*v. New Banner Inst., Inc.,* 460 U.S. 103, 111-12 (1983)) (emphasis added); *see*

*Botes v. U.S. Att'y Gen.*, 436 F. App'x 932, 934 (11th Cir. 2011) (per curiam)

(unpublished but recognized for persuasive value) (holding the Board of

Immigration Appeals did not err in denying reconsideration of petitioner's motion

---

[3] The dissent misconstrues why we state defense counsel's seeking clarification of Garza-Mendez's sentencing order from a different Gwinnett County judge was strategically planned. Garza-Mendez did not question his state sentence or seek clarification when it was imposed. After any state procedural period for challenging the sentencing judge's order had long passed, Garza-Mendez's lawyer sought to clarify his original sentence five years after it was imposed and two months before Garza-Mendez's federal sentencing for illegal re-entry into the United States. While his lawyer was being an innovative advocate, the federal sentencing judge had to apply federal law, based solely on the original state sentence. We simply noted the obvious facts.

The dissent's assertion that we use comity only when it increases a defendant's sentence is off the mark. When comity aids defendants in reducing federal sentences, the overwhelming probabilities are there would be no appeals. The dissent does not cite one case in the posture of this case, where defense counsel obtained a clarification order of a state-court sentence well after the state procedural period for challenging the sentence had expired to attempt to alter a later federal sentence in federal court. Under the circumstances of this case, the district judge determined the subsequent state-court clarification order was not entitled to deference, because of the unambiguous language of the sentencing order as well as federal statutory and circuit law. The dissent's charges impugning the integrity of our court are both outrageous and totally unfounded.

to reopen his removal proceedings to reconsider whether his 12-month sentence, including 60 days of confinement and 10 months on probation, caused his imprisonment term to be less than one year). A portion of a sentence to be served on probation nevertheless returns the convicted defendant to prison if probation is violated.[4]

Because this is a *federal* case for unlawful re-entry into the United States following deportation and involves the interpretation of the Sentencing Guidelines and federal statutes, a federal judge is in a better position to interpret the state-sentence order regarding its effect on Garza-Mendez's federal sentence under federal law than another state judge, who did not impose his sentence. *See Aguilar-Ortiz*, 450 F.3d at 1273 (stating a federal court generally "look[s] no farther than the judgment of conviction" and applicable federal statutes to determine "whether a prior conviction is a qualifying offense for enhancement

---

[4] At sentencing, the district judge explained to defense counsel that Garza-Mendez's battery crime required him "to go to jail for a year," and the probation portion was "a way to hold [him] accountable" if he failed to comply with "what [he was] supposed to do." R3 at 141. He told defense counsel: "[Y]ou are just taking this term probation and somehow twisting it to say . . . that's not a sentence of incarceration." *Id.* at 142. The judge further explained: "[W]hen a judge checks a box and says one year, he's intending to impose a prison sentence of one year." *Id.* at 143. Defense counsel acknowledged that, if Garza-Mendez violated his probation, then he could go to jail for "the maximum amount of time on the original sentence, just like in federal court." *Id.* at 146. The judge determined that "*[Garza-Mendez] was deported knowing that he had committed a crime of violence for which he was sentenced to a year*, and the moment that he crossed the border when he was removed from the [United States], he knew that was the sentence that he was under." *Id.* at 151 (emphasis added).

purposes"). The original state sentence plainly speaks for itself but then must be interpreted under federal law in federal court concerning a federal crime.

Accordingly, our interpretation of whether Garza-Mendez's original sentence was an imprisonment term of at least one year governs, not the subjective, interpretive clarification order obtained from a different state judge five years after imposition of the sentence for the purpose of preventing an 8-level enhancement for his state-battery conviction. Garza-Mendez pled guilty to a state crime of violence, which he does not contest, and was sentenced to a term of imprisonment of at least one year. That qualifies as an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(F), which made application of the 8-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C) proper.

B. Failure to Depart Downward for Cultural Assimilation

Garza-Mendez contends the district judge erred for failing to depart downward based on his cultural assimilation in the United States under U.S.S.G. § 2L1.2 cmt. n.8. The Sentencing Guidelines allow departure under cultural assimilation only where

> (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

10

U.S.S.G § 2L1.2 cmt. n.8.  In determining whether this departure is appropriate, the sentencing judge considers:

> (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

*Id.*  In denying his request for a departure or variance for cultural assimilation, Garza-Mendez argues the judge had a single-minded focus on his criminal history with no consideration of his assimilation into the United States.[5]

We review all sentences "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).  A district judge need not discuss each 18 U.S.C. § 3553(a) factor in explaining a sentence, provided defendant's arguments at sentencing are considered, and the judge states "the § 3553(a) factors [have been taken] into account."  *United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court"; we will not remand

---

[5] Among Garza-Mendez's arguments for assimilation consideration are his parents brought him to the United States when he was seven, he learned English in one year, and he attended elementary school, middle school, and high school through eleventh grade in the Atlanta, Georgia, area.

for resentencing unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553 factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (citation and internal quotation marks omitted).

The sentencing judge recognized that Garza-Mendez's "immigration history is that he's in the United States illegally" and "he illegally returned to the United States," which is the basis of his conviction under 8 U.S.C. § 1326(a) and (b)(2). R3 at 160. In addition, the government noted his criminal history in the United States was "extremely lengthy." *Id.* at 163. Although brought to the United States "as a child at seven" in 1996, "[a]fter he turned 17 in 2006 is when his criminal history began," and "basically every year from 2006 through 2012, he was arrested and/or convicted for crimes in the U.S." *Id.* Garza-Mendez had "ten convictions for either driving without a license or driving on a suspended license," "a battery conviction," and "false reporting of a crime." *Id.* at 163, 164. Following his return after deportation, Garza-Mendez engaged in his former vehicular offenses, some of which involved the safety of others—"speeding, improper child restraint, [and] aggressive driving." *Id.* at 165. In 2012, prior to his federal sentencing in June, he had "two more arrests driving without a license and one resulting in a conviction." *Id.* at 164. The government noted his "pattern and practice" of criminal conduct in

12

the United States, resulting in "multiple convictions of the same offense" and a DUI and family-violence battery, both of which are serious offenses. *Id.* at 165.

The district judge recognized that, prior to his illegal return to the United States, Garza-Mendez "had a history of not being able to comport his conduct to the law, including striking a woman that is apparently the mother of his children." *Id.* at 160. "[H]e will be sentenced based in part upon his criminal history and his . . . inability to conform his conduct to the laws of the United States." *Id.* at 161. In denying Garza-Mendez a departure for cultural assimilation, the judge explained:

> There aren't a lot of people, Mr. Garza-Mendez, who are brought here by their parents when they are children that have had as hard a time as you have complying with some of the simplest rules that provide people in the United States with a safe environment. And you just can't do that, and you haven't been able to do that for a number of years.
>
> And a cultural assimilation departure . . . is one that is not very often given, and it's reserved for those unique cases where there has been somebody who has come to the United States when they were young, completely integrated in the culture, and have lived lawfully.
>
> One of the assimilation requirements is that you come to the United States and observe its laws, that you don't hurt people, you don't put people at risk, that you don't lie to the authorities about crimes. And you just haven't been able to do that.
>
> And this isn't even a close case on cultural assimilation. You would not qualify for that.

*Id.* at 167-68. He also said he had "looked at all the factors under 3553" and concluded "the community is entitled to a just punishment. That's what most—half of the factors deal with, and that is just punishment, deterring you." *Id.* at 171.

13

The judge determined Garza-Mendez's criminal history both before and after he was deported outweighed the other § 3553(a) factors.  Therefore, he concluded a departure or variance for cultural assimilation was inappropriate for Garza-Mendez and sentenced him to 20 months of imprisonment.  Based on our review of the record and sentencing proceedings, we find no abuse of discretion in the judge's declining to accord Garza-Mendez a departure or variance on cultural assimilation.

C. Extraterritorial Reporting on Supervised Release

Garza-Mendez challenges the district judge's requiring him to report from Mexico during his 3-year term of supervised release, following his deportation.  A special condition of Garza-Mendez's supervised release states that, after his deportation, he

> shall notify, in writing and within ten (10) calendar days, the United States Probation Office in the Northern District of Georgia of his current address in the country to which he is deported and any later change in residence address. Failure to do so will constitute a violation of his supervised release.

R1-17 at 3.  "We review the district court's imposition of a special condition of supervised release for abuse of discretion, so long as the objection was preserved for appeal."  *United States v. Guzman*, 558 F.3d 1262, 1264 (11th Cir. 2009) (per curiam) (citation and internal quotation marks omitted).

After Garza-Mendez's sentence was imposed, defense counsel

14

object[ed] to [the] terms of supervision to the extent that it requires reporting from Mexico the ten days after he gets there[,] his residence[,] and any change of residence . . . . as being beyond the jurisdiction of the Court, and also as an unreasonable condition of supervision in light of the fact that there is no guarantee . . . someone can actually get to their home in ten days when dropped off at the border or wherever they are taken.

R3 at 176.  On appeal, he further contends U.S.S.G. § 5D1.1(c) instructs a sentencing judge not to impose supervised release, when the convicted defendant is likely to be deported following imprisonment.[6]  The commentary application notes provide: "The court should, however, consider imposing a term of supervised release on such a defendant *if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case*."  U.S.S.G. § 5D1.1 cmt. n.5 (emphasis added).   The Sentencing Guidelines permit imposition of any condition of supervised release that is "reasonably related" to the § 3553(a) factors, as long as the conditions "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth [in § 3553(a)] and are consistent with any pertinent policy statements issued by the Sentencing Commission."  U.S.S.G § 5D1.3(b); *see United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) (recognizing, under 18 U.S.C. § 3583(d), "the district

---

[6] The relevant Guideline provides: "The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."  U.S.S.G. § 5D1.1(c).

15

court may impose any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in § 3553(a)").

Similar to this case, *Guzman* concerned a Mexican citizen, who illegally re-entered the United States after being deported. He contended on appeal his 3-year term of supervised release was unreasonable, because it included strict extraterritorial reporting requirements. Since the government would know of his deportation, he argued the reporting requirement was not reasonably related to the § 3553(a) factors. We determined his reporting was not imposed to confirm Guzman had been deported but to ensure he remained in Mexico by allowing his probation officer to monitor his location. *Guzman,* 558 F.3d at 1265. We concluded the reporting requirement to verify Guzman remained in Mexico was reasonably related to several § 3553(a) factors: his unlawful re-entry crime, deterrence from illegally re-entering the United States again, and protection for the public from his future attempt to re-enter this country unlawfully. *Id.*; *see* 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C). This rationale applies to Garza-Mendez's same contentions.

To the extent Garza-Mendez argues that 3 years of reporting his location from Mexico is overly focused on deterrence, his re-entry into the United States a month after his deportation in 2011 belies his argument. At sentencing, the judge told Garza-Mendez: "I mean, you have to be deterred. We tried to deter you once

16

by removing you and telling you not to come back.  That didn't work, so we have to do something more now."  R3 at 171.  Garza-Mendez's reporting requirement from Mexico comports with the § 3553(a) factors, particularly since this is his second deportation from the United States.

**AFFIRMED.**

17

# APPENDIX

IN THE STATE COURT of GWINNETT COUNTY

STATE of GEORGIA

vs.

ROBERTO CARLOS GARZA-MENDEZ

CRIMINAL ACTION _____

FINAL DISPOSITION

OFFENSE(s) FU Batt, Simp Batt, Simp Batt

_June_ TERM, 200_7_

RACE: _____ SEX: _____ DOB: _____

OTN: _____ DATE of OFFENSE: 4-28-07

**PLEA:**
- [x] NEGOTIATED
- [x] GUILTY ON CT(s) _____1_____
- [ ] NOLO CONTENDERE CT(S) _____

**TRIAL:**
- [ ] JURY
- [ ] BENCH

**VERDICT:**
- [ ] GUILTY ON CT(S) _____
- [ ] NOT GUILTY CT(S) _____

**OTHER:**
- [x] NOLLE PROS CT(S) 2,3
- [ ] DEAD DOCKET CT(S) _____

## MISDEMEANOR SENTENCE

WHEREAS, the defendant has been found guilty of of has entered a plea to the above-stated offense(s), it is ORDERED that the defendant is sentenced to:
[x] Confinement in the Gwinnett County [ ] Jail [x] Comprehensive Correctional Complex for a period of _12 months_

[x] After service of _30 hours_

Credit time served _30 hours_ _____ The remainder to be served on [x] PROBATION [ ] SUSPENSION

[x] The entire sentence of confinement may be served, subject to the conditions set out herein, on [x] PROBATION [ ] SUSPENSION

[ ] Payment of RESTITUTION (see attached order.) [x] Fine in the amount of $ 350.00 _____ Pay by: _____
PLUS applicable surcharges.

## CONDITIONS OF [x] PROBATION [ ] SUSPENSION

(1) [x] You must obey all laws and avoid persons of disreputable or harmful character.

(2) [x] You must avoid injurious and vicious habits, especially alcohol and narcotics unless lawfully prescribed.

(3) [x] You must work faithfully and not change your current residence or leave the jurisdiction of the Court without the permission of the Court.

(4) [x] You must report to your Probation Officer as directed and allow your Probation Officer to visit you wherever you are.

(5) [x] You must pay all fines and restitution within the time specified by your Probation Officer.

(6) [x] You must pay a Probation Supervision Fee of $30 each month to Professional Probation Services, Inc., the Courts probation services contractor.

(7) [x] You must pay a Crime Victims Compensation Program fee of $9.00 each month.

(8) [ ] You must perform _____ hours of COMMUNITY SERVICE at the direction of your Probation Officer.

(9) [ ] You must perform _____ days of COMMUNITY SERVICE through the GCCI. REPORT _____ For orientation. You must pay a Supervision Fee of $75 plus a daily fee determined by the program director.

(10) [ ] You must prove your attendance at [ ] Alcoholics Anonymous or [ ] Narcotics Anonymous _____ meetings PER WEEK for _____ consecutive weeks.

(11) [ ] You must prove you attended a state approved school for [ ] State mandated Risk Reduction [ ] Defensive Driving

(12) [ ] You must provide proof of your evaluation and treatment for [ ] mental health [ ] substance abuse at the GRN Mental Health Unit.

(13) [ ] You will not use alcohol or narcotics and you must submit to random alcohol / drug screening.

(14) [x] You must have NO contact with/NO VIOLENT contact with, or visit the premises of _Leticia Mejia_

(15) [x] You must provide proof of attendance and completion of [x] certified family violence intervention program [ ] anger management

(16) [ ] Appear before this Court on _____, at _____ A.M. to prove completion of the terms of this sentence or your inability to comply.

(17) [ ] You must [ ] pay a $25 Publication fee [ ] Install ignition interlock [ ] tag forfeiture

(18) [x] If fines, surcharges, & special conditions of the sentence are met/completed, probation may become [x] non-reporting

(19) [ ] Attend the Victim Impact Panel [ ] scheduled: _____ @6:30 p.m. [ ] as scheduled by probation. Pay a program _____

(20) [ ] _____

(21) [ ] _____

The Defendant is further advised that the Court may, at any time, revoke any conditions of this probation and / or discharge the defendant from probation. The Defendant shall be subject to arrest for violation of any condition of probation herein granted. If such probation is revoked, the Court may order the execution of the sentence which was originally imposed, or any portion thereof, in the manner provided by law after deducting therefrom the amount of time the defendant has served on probation.

Defendant was represented by Attorney _____

County, by [ ] Employment [ ] appointment

Court Reporter _Linda Archibald_    Judge (print) _Matthew Robins_

ORDERED this _30th_ day of _August_, 200_7_    Judge (sign) _____

By designation

WHITE - Clerk YELLOW - Solicitor PINK - Probation BLUE - Defense Attorney

Matthew Robins Fm 18 NCR (30) July 2004
Senior Judge
State of Georgia
By Designation

MARTIN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from Part II.A of the Majority Opinion, which holds that Mr. Garza-Mendez's family violence battery conviction is an "aggravated felony" for purposes of United States Sentencing Guidelines (USSG) § 2L1.2(b)(1)(C). Unlike the Majority, I believe a proper application of our precedent requires the District Court to defer to the clarification order issued by the Gwinnett County State Court, which clearly states that Mr. Garza-Mendez's sentence for his family violence battery conviction was 12 months of probation, with the first 30 hours served in custody, not 12 months of incarceration. State v. Garza-Mendez, No. 2007-D-04212-S5 (Ga. Gwinnett Cty. Ct. Apr. 17, 2012) (Order Clarifying Sentence). Deferring to this order, I would find that Mr. Garza-Mendez's conviction does not constitute an "aggravated felony" because he did not receive a "term of imprisonment" of at least one year. See United States v. Guzman-Bera, 216 F.3d 1019, 1021 (11th Cir. 2000) (holding that "when a court does not order a period of incarceration and then suspend it, but instead imposes probation directly, the conviction is not an 'aggravated felony'") (quoting United States v. Banda-Zamora, 178 F.3d 728, 730 (5th Cir. 1999)).

I also write separately, however, to express my concerns about the Majority's astonishing refusal to defer to the State Court's order. The failure to do so is not consistent with the longstanding tradition in this Court of promoting

19

comity between state and federal courts in criminal cases.  In the vast majority of criminal cases, deference to comity works to the detriment of federal defendants because it bars them from challenging their State Court convictions, which are used to enhance their federal sentences.  See, e.g., United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997) ("Collateral attacks on prior convictions are allowed in federal sentencing proceedings in one narrow circumstance only: when the conviction was obtained in violation of the defendant's right to counsel."); United States v. Jackson, 57 F.3d 1012, 1018 (11th Cir. 1995) ("Generally, we do not allow a defendant to collaterally attack in the sentence proceeding convictions being used to enhance his sentence.").

This case, of course, presents one of the rare instances in which showing deference and comity to the State Court would benefit a federal defendant.  But here, in contrast to our usual practice, the Majority shows no comity and no deference to an order of the State Court clarifying the terms of the sentence that it imposed on Mr. Garza-Mendez.  The Majority's refusal to credit the State Court's clarification of its own sentence is perplexing, especially given that, in my experience, we do not scrutinize State Court judgments in the same way when they result in a harsher sentence for criminal defendants.  See, e.g., United States v. Sanchez, 586 F.3d 918, 931 (11th Cir. 2009) ("Except for convictions that are presumptively void, a defendant may not use a sentencing proceeding to mount a

20

collateral attack on a prior conviction."); <u>United States v. Brand</u>, 163 F.3d 1268, 1275 (11th Cir. 1998) ("Brand's collateral attack of the state court order is not cognizable.").

The Majority's efforts to justify its lack of comity are not persuasive. Although the Majority correctly points out that the state judge who issued the clarification order was not the sentencing judge,[1] it cannot cite to any authority suggesting that an order entered under such circumstances is entitled to less deference than any other state court order.[2] <u>See</u> <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 462–63, 102 S. Ct. 1883, 1887–88 (1982) ("As one of its first acts, Congress directed that all United States courts afford the same full faith and credit to state court judgments that would apply in the State's own courts."). Neither can the Majority explain why the Gwinnett County State Court is not in the best position to interpret and explain whether it imposed on Mr. Garza-Mendez a sentence of imprisonment or probation. We should accept Judge South's Order Clarifying Sentence to be what she said it is—an order clarifying the original terms of Mr. Garza-Mendez's sentence.

---

[1] A fact not relied upon, or even mentioned by the District Court in its ruling enhancing Mr. Garza-Mendez's sentence.

[2] Indeed, given Judge South's extensive experience, she was well-equipped to interpret Mr. Garza-Mendez's sentence. Publicly available records indicate that Judge South has served as a Judge of the State Court of Gwinnett County since 2001. Prior to joining the bench, Judge South served on the Gwinnett County Magistrate Court and as a prosecutor in the Gwinnett County District Attorney's Office.

The Majority also suggests that the State Court's clarification order need not be given any weight because it involves the interpretation of a "state-sentence form as to federal law." This argument, however, is simply wrong on its face. Nowhere does the State Court's clarification order reflect an attempt to apply federal law in determining how the Sentencing Guidelines should be applied to Mr. Garza-Mendez in this case. All that the order purports to do is clarify that Mr. Garza-Mendez's sentence for his family violence battery conviction was 12 months of probation, with the first 30 hours to be served in custody, rather than 12 months of incarceration. Even though this clarification may have the practical effect of resolving the aggravated felony enhancement issue in this case, the record before us is utterly devoid of any indication that the State Court attempted to answer any questions of federal law in its order. Rather, all of its determinations were either factual or based on state law, and we owe deference to these determinations. See Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

Finally, the Majority implies that the State Court's order is not reliable because it was "strategically timed" by Mr. Garza-Mendez's attorney "for the purpose of preventing an 8-level enhancement." But I see no reason at all why the State Court's order should be given any less deference because it was obtained by Mr. Garza-Mendez's attorney. Certainly we give no less deference to State Court

22

sentencing orders obtained and presented by prosecutors. We also know that, as a general rule, federal criminal defendants are not permitted to collaterally attack a prior State Court conviction in federal court. See Custis v. United States, 511 U.S. 485, 496–97, 114 S. Ct. 1732, 1738–39 (1994) (holding that with the sole exception of convictions obtained in violation of the right to counsel, defendant has no right under the Armed Career Criminal Act or the Constitution to collaterally attack a prior State Court conviction at his federal sentencing proceeding). This being the case, the only way that Mr. Garza-Mendez could attack or clarify his prior State Court conviction was to go back to the State Court that imposed it. See United States v. Medlock, 12 F.3d 185, 189 (11th Cir. 1994) ("Our system of federalism does not envision federal sentencing courts sitting as open-door review boards at the beck and call of defendants who have failed to avail themselves of well-established procedures for direct appeal or habeas scrutiny."). It is hard to imagine why the Majority penalizes Mr. Garza-Mendez for going exactly to the place we tell criminal defendants to go when they wish to clarify their State Court judgments.

I close by emphasizing again that the Majority's lack of deference here is striking because, in my experience, it has always been the practice of this Court to exercise great deference to State Court judgments in criminal cases, especially when comity bars defendants from obtaining relief in federal court. Surely it is

23

true that equal justice requires us to show deference and comity to State Court judgments in all situations, whether it serves to help or hurt a defendant in our Court.  Indeed, it must be our charge to prevent the principle of comity from being reduced to a mere tool that works only to the disadvantage of criminal defendants. Cf. United States v. Early, 686 F.3d 1219, 1223–25 (11th Cir. 2012) (Martin, J., concurring) (observing that this Court typically upholds any upward variance above the Sentencing Guidelines range but rarely shows deference to a sentencing court's decision to grant a downward variance).

I respectfully dissent to the denial of relief to Mr. Garza-Mendez with respect to the use of his 2007 family violence battery conviction to enhance the federal sentence we consider here.