[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15080

_____

Agency No.  A076-485-882

ALFREDO NICOLAS TALAMANTES-ENRIQUEZ,
a.k.a. Alfredo Talamantes,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 9, 2021)

Before WILSON, ROSENBAUM, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Alfredo Talamantes-Enriquez petitions for review of the Board of

Immigration Appeals' dismissal of his appeal from an immigration judge's

removal order.  That order was based on the IJ's determination that he is ineligible

for cancellation of removal because he has been convicted of an "aggravated felony" as the Immigration and Naturalization Act defines the term.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Talamantes is a native and citizen of Mexico who entered the United States without inspection in 1994.  In 2017 the Department of Homeland Security finally initiated removal proceedings against him.  After a variety of proceedings that don't matter to the issue raised in this appeal, the question of whether Talamantes would be removed came down to whether he had been convicted of an "aggravated felony" as the INA defines that term.

On that issue, the IJ had before him the "accusation" and "final disposition" for each of two Georgia simple battery convictions.  The first one was from February 2001.  The accusation that led to the conviction charged Talamantes with simple battery under "O.C.G.A. Section 16-5-23," alleging that he had "cause[d] physical harm to [two women] by striking them in the face."  After pleading nolo contendere, Talamantes was convicted and "sentenced to confinement for a period of 12 mo[nth]s," which he was allowed to serve on probation.  The sentence order stated if Talamantes violated the terms of probation the state court could revoke probation and "order the execution" of the original sentence of confinement.

The second conviction was from April 2001.  The accusation that led to it charged Talamantes with simple battery under "O.C.G.A. Section 16-5-23,"

2

alleging that he "cause[d] physical harm to [a woman] by throwing books at her and leaving visible scratches on her arm."  After pleading guilty, he was convicted and "sentenced to confinement for a period of 12 mo[nth]s," which he was allowed to serve on probation.  The sentence order stated if Talamantes violated the terms of probation the state court could revoke probation and "order the execution" of the original sentence of confinement.  Just like the sentence order had in the first case.

Talamantes applied for cancellation of removal, among other relief.  The IJ denied his application and ordered him removed based on the two Georgia battery convictions.  It determined that both of them were aggravated felonies under the INA because they met the components of the applicable statutory definition: the convictions were for a crime of violence and, for each, Talamantes had been sentenced to a term of imprisonment of at least one year.  Talamantes' attorney told the IJ that she was seeking "clarification or modification orders" from a Georgia state court about the sentences imposed on Talamantes, but the IJ determined that clarification wasn't necessary because the sentence orders were "clear, unambiguous and express on their face."

Talamantes appealed to the BIA.  While that appeal was pending, a Georgia state judge granted Talamantes' motions for clarification and issued an order in each of the two simple battery cases that purported to "clarify" the sentences imposed. Each of those two orders contained this operative language:

3

> Standard sentencing forms were used in imposing [Talamantes']
> sentence of probation; however, the Court's standard form language
> made it seem like [Talamantes'] sentence was a period of confinement
> when in fact it was only a sentence of probation.
>
> Therefore, in light of the aforementioned mischaracterization of
> [Talamantes'] sentence, the Court hereby clarifies that the sentence
> imposed in this case . . . was a sentence of twelve months probation,
> and none of that sentence was to be served in confinement insofar as he
> did not violate probation, which he did not.

The orders were prepared by Talamantes' attorney. The judge who signed them was not the judge who had sentenced Talamantes in either case.

Relying on the "clarification" orders, Talamantes asked the BIA to remand his case to the IJ. The BIA granted the request, remanding the case to the IJ for consideration of the impact, if any, of the orders on the pending immigration case. The IJ concluded that the orders had no impact and that Talamantes' simple battery convictions had resulted in sentences that were clearly for at least one year of imprisonment for INA purposes. The IJ ordered Talamantes removed.

Talamantes again appealed to the BIA. This time the BIA dismissed his appeal. It did so after determining that Talamantes' two simple battery convictions were for crimes of violence and that his sentences were each for a term of imprisonment of at least one year. Talamantes timely petitioned this Court for review.

4

## II.  DISCUSSION

Talamantes contends the BIA erred in determining that his Georgia simple battery convictions were for aggravated felonies under the INA.  His argument has two parts: that the simple battery convictions were not for "crimes of violence" under the INA's definition of that term; and, even if they were, neither sentence was for at least one year of imprisonment.

"We review questions of law de novo, including whether a conviction qualifies as an aggravated felony under the Immigration and Nationality Act." Herrera v. U.S. Att'y Gen., 811 F.3d 1298, 1300 (11th Cir. 2016) (quotation marks omitted and alteration adopted).  We don't have jurisdiction to review the BIA's discretionary decisions about removal, but we do have jurisdiction to review questions of law.  See, e.g., Germain v. U.S. Att'y Gen., No. 20-11419, 2021 WL 3659299, at *3 (11th Cir. Aug. 18, 2021) ("[W]hen an alien asks us to review a denial of cancellation of removal, we can review only constitutional and legal questions.").

"Any alien who is convicted of an aggravated felony at any time after admission" can be removed.  8 U.S.C. § 1227(a)(2)(A)(iii).  Likewise, any alien who has been convicted of an aggravated felony is ineligible for cancellation of removal.  See id. § 1229b(b)(1)(C); see also Gordon v. U.S. Att'y Gen., 962 F.3d 1344, 1347 (11th Cir. 2020) ("If [the petitioner's] conviction qualifies as an

5

aggravated felony, he is both removable and ineligible for cancellation of removal . . . ."). The issue is whether Talamantes is ineligible for cancellation of removal. He bears the burden of proving that he is not. See Pereida v. Wilkinson, 141 S. Ct. 754, 760–61 (2021).

Talamantes' ineligibility for cancellation turns on whether he was convicted of an "aggravated felony." The term is defined by the INA to include "a crime of violence . . . for which the term of imprisonment [was] at least one year." 8 U.S.C. § 1101(a)(43)(F) (footnote omitted). It only takes one aggravated felony to render a petitioner ineligible but, as we will explain, each of Talamantes' simple battery convictions is an aggravated felony.

## A. Crime of Violence

An aggravated felony under the INA must be a "crime of violence." The applicable statutory definition of a "crime of violence" is: "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a); see also 8 U.S.C. § 1101(a)(43)(F) (stating that "a crime of violence" is "as defined in section 16 of Title 18"). The key term in that definition is "physical force." The Supreme Court has defined that term as used in an identically worded statutory definition of a "violent felony." See Curtis Johnson v. United States, 559 U.S. 133, 140 (2010) (interpreting 18 U.S.C. § 924(e)(2)(B)(i)). The Court defined "physical force" to

6

mean "<u>violent</u> force — that is, force capable of causing physical pain or injury to another person." <u>Id.</u>; <u>see also</u> <u>Stokeling v. United States</u>, 139 S. Ct. 544, 553 (2019) ("In the wake of [<u>Curtis</u>] <u>Johnson</u>, the Court has repeated its holding that 'physical force' means 'force capable of causing physical pain or injury.'") (quotation marks omitted). The <u>Curtis Johnson</u> definition of "physical force" applies to § 16(a). <u>See</u> <u>Lukaj v. U.S. Att'y Gen.</u>, 953 F.3d 1305, 1312 (11th Cir. 2020). Which channels the physical force question into whether Talamantes' Georgia convictions for simple battery involved "force capable of causing physical pain or injury to another person." <u>Id.</u>

To answer that question "we apply a categorical or modified categorical approach, depending on the statutory scheme." <u>Guillen v. U.S. Att'y Gen.</u>, 910 F.3d 1174, 1180 (11th Cir. 2018) (quotation marks omitted). Under the categorical approach, we do not consider the underlying facts of the particular crime, but only "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." <u>Moncrieffe v. Holder</u>, 569 U.S. 184, 190 (2013) (quotation marks omitted). A state statute categorically fits if its "elements are the same as, or narrower than, those of the generic [federal] offense." <u>Spaho v. U.S. Att'y Gen.</u>, 837 F.3d 1172, 1177 (11th Cir. 2016) (quotation marks omitted) (quoting <u>Descamps v. United States</u>, 570

7

U.S. 254, 257 (2013)). The required approach is an elements-to-elements comparison, not a facts-to-elements comparison.

Sometimes we use a "modified" categorical approach. We do that when the statute that the defendant was convicted of violating is "divisible into alternative crimes" and has different phrases or subsections under which he may have been convicted. Id.; see also Pereida, 141 S. Ct. at 763. If that's the kind of statute we are dealing with, we have to determine which phrase or subsection within the statute served as the basis for the defendant's conviction. See Spaho, 837 F.3d at 1177. After determining that, we isolate the statutory phrase or subsection and its elements, and apply the categorical approach to them, comparing those elements to the required ones. Id.

To determine whether we are restricted to the categorical approach or can apply the modified categorical approach, we must first determine if Georgia's simple battery statute, O.C.G.A. § 16-5-23, is divisible. See Spaho, 837 F.3d at 1176 (noting that to assess whether a "state conviction was an aggravated felony conviction, the Board first had to decide whether [the statute] is divisible and thus subject to the modified categorical approach instead of the categorical approach").

Before doing that ourselves, we pause to discuss whether it matters to our course of action that the Board itself did not make a divisibility determination. When the BIA has not addressed an issue, we typically follow the "ordinary

remand rule," which provides that "the proper course, except in rare circumstances, is to remand." Calle v. U.S. Att'y Gen., 504 F.3d 1324, 1329 (11th Cir. 2007) (quotation marks omitted) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002)). But when the "rare" circumstance is that the "issue is legal, not factual," id. at 1330 (quotation marks omitted), following the "ordinary remand rule" would not be ordinary, and the reasons for following it lose force: administrative law generally justifies the deference we must give to agencies as being based on agency expertise, cf. id. (noting that we could decide a legal issue without BIA input because it was "not an inquiry upon which the BIA could 'bring its expertise to bear . . . evaluate the evidence . . . make an initial determination [and, thereby] help a court later determine whether its decision exceeds the leeway that the law provides'") (alterations in original) (quoting Gonzales v. Thomas, 547 U.S. 183, 186–87 (2006)).

The question is not one that lends itself to agency expertise but instead involves a purely legal question, which falls within the expertise of federal courts. Not only that, but we review de novo legal questions, including divisibility and application of the modified categorical approach. See George v. U.S. Att'y Gen., 953 F.3d 1300, 1303–04 (11th Cir. 2020) (labeling the BIA's determination of which part of a divisible statute the petitioner had been convicted under as a "legal conclusion[]" and reviewing it de novo); Spaho, 837 F.3d at 1176–79 (reviewing

de novo the BIA's application of the modified categorical approach); Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1279–81 (11th Cir. 2013) (reviewing divisibility de novo as a question of law).  Remanding pure law issues to an administrative agency risks an "idle and useless formality" of a proceeding.  NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969).  After all, administrative law "does not require that we convert judicial review of agency action into a ping-pong game." Id.  Because the application of the modified categorical approach is a legal issue, the "ordinary remand rule" does not apply here.

Turning back to our divisibility analysis, a statute is divisible if it "lists a number of alternative elements that effectively create several different crimes." Guillen, 910 F.3d at 1180 (quotation marks omitted).  For that reason, "[i]n determining divisibility, we focus primarily on the statutory text."  Spaho, 837 F.3d at 1177.  The text of § 16-5-23 provides:

> (a) A person commits the offense of simple battery when he or she either:
>> (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or
>> (2) Intentionally causes physical harm to another.

Ga. Stat. § 16-5-23 (emphasis added).  Alternative sets of elements usually signal divisibility.  See generally United States v. Howard, 742 F.3d 1334, 1346–49 (11th Cir. 2014) (noting and explaining the difference for this purpose between "illustrative examples" and "alternative elements").  But alternative sets of

10

"various factual means of committing a single element" usually do not. See

generally Mathis v. United States, 136 S. Ct. 2243, 2249 (2016) (explaining for

this purpose that a list of illustrative examples that "spells out various factual ways

of committing some component of the offense" is a list of "disjunctive factual

scenarios rather than separate elements").  Section 16-5-23 lays out two sets of

alternative elements that effectively define different crimes: one crime of insulting

contact battery, and one crime of physically harmful battery.  Because it does, the

statutory text demonstrates divisibility.  Cf. United States v. Gandy, 917 F.3d

1333, 1339 (11th Cir. 2019) (holding that Florida's simple battery statute, Fla. Stat.

§ 784.03(1)(a), which contains two numbered phrases — "touches or strikes

another person" and "[i]ntentionally causes bodily harm to another person" — that

are separated by the word "or," is divisible).

As this discussion demonstrates, on divisibility questions "we take guidance

from state court decisions," Spaho, 837 F.3d at 1177, and "when state law provides

a definitive answer, the divisibility inquiry is a straightforward one," Guillen, 910

F.3d at 1184.  Georgia courts have pointed out that § 16-5-23 includes a distinction

between two kinds of contact, with (a)(1) covering "intentional contact of an

insulting or provoking nature, contemplating a touching which does not injure but

which is insulting," and (a)(2) covering "the intentional causation of physical

harm, a touching which goes beyond insult to the infliction of pain."  Lyman v.

11

State, 374 S.E.2d 563, 565 (Ga. Ct. App. 1988); see also State v. Randle, 781 S.E.2d 781, 784 (Ga. 2016) (noting that both Georgia's legislature and Georgia's appellate courts have recognized this).

Because of the difference between the elements of § 16-5-23(a)(1) and (a)(2), it is error for a trial court to instruct the jury on simple battery based on "insulting or provoking" contact if the defendant was actually charged with simple battery based solely on "physical harm," unless the jury is also given a limiting instruction. See, e.g., Hammonds v. State, 587 S.E.2d 161, 163 (Ga. Ct. App. 2003) (noting that "[w]hen an indictment specifies the commission of a crime by only one of several methods possible under the statute, but the court charges the entire Code section, the deviation may violate due process unless a limiting instruction is given"); Lyman, 374 S.E.2d at 565 ("[I]t is reversible error to instruct the jury that an offense may be committed in more than one manner where only one manner is alleged in the indictment and no remedial instructions are given to limit the jury's consideration to that particular manner."); Owens v. State, 326 S.E.2d 509, 512 (Ga. Ct. App. 1985). Simple battery based on "physical contact of an insulting nature . . . must be charged specifically." Lyman, 374 S.E.2d at 565. That is true because the statute is divisible. See Guillen, 910 F.3d at 1183 (holding a Florida drug possession statute was divisible as to particular substances in part because "Florida's District Courts of Appeal have overturned convictions because

12

the substance named in the charging document differed from the one shown to have been involved in the offense"); United States v. Gundy, 842 F.3d 1156, 1168 (11th Cir. 2016) ("The fact that under Georgia law the indictment must charge the type of place or location with such specificity further demonstrates that § 16-7-1's statutory listing of alternative locations for committing a burglary constitutes an enumeration of alternative elements.").

And because the two provisions of § 16-5-23(a) are divisible, a Georgia defendant can be convicted for the same conduct of two separate counts of simple battery, one based on (a)(1) and the other based on (a)(2). See Eberhart v. State, 526 S.E.2d 361, 362–64 (Ga. Ct. App. 1999); cf. Mai v. State, 577 S.E.2d 288, 289 (Ga. Ct. App. 2003). That is possible only because of divisibility. See Guillen, 910 F.3d at 1182 (noting that such a situation "necessarily implies that the statute is divisible: a defendant cannot be convicted and sentenced for two offenses with identical elements arising from the same facts"); Gordon, 962 F.3d at 1349. For all of these reasons, the statutory text and state law make it clear that § 16-5-23(a) is divisible.

Given the divisibility of § 16-5-23(a), we can and do apply the modified categorical approach to determine whether Talamantes was convicted under § 16-5-23(a)(1) or (a)(2). That involves examining the charging documents, plea agreements and colloquies, and comparable judicial records — documents

13

generally known as "Shepard documents," a name borrowed from the Supreme

Court decision that approved their use. See, e.g., Gandy, 917 F.3d at 1339 (citing

Shepard v. United States, 544 U.S. 13, 20–21, 26 (2005)). The question is whether

the Shepard documents for Talamantes' simple battery convictions show that he

"necessarily" was convicted under § 16-5-23(a)(1) or (a)(2). See id. at 1340. We

can conclude whether he was convicted under a particular subsection if the

Shepard documents "speak plainly" to it. Id. (quoting Mathis, 136 S. Ct. at 2257).

They do in this case.

As we have iterated and reiterated, Georgia law establishes a difference in

the simple battery statute between contact causing physical harm and contact that

is merely insulting or provoking. See supra at 12–13. And, also as discussed, that

difference matters for charging purposes — an accusation alleging simple battery

based on only § 16-5-23(a)(2)'s "physical harm" language cannot support a

conviction for simple battery under § 16-5-23(a)(1)'s "insulting or provoking"

contact language. See supra at 12–13. It matters here because the charging

documents underlying both of Talamantes' simple battery convictions allege the

elements of § 16-5-23(a)(2) but not the elements of (a)(1). That is proof positive

he was convicted under subsection (a)(2), not (a)(1).

While the formal accusation underlying the February 2001 conviction does

not explicitly state that Talamantes was charged under subsection (a)(2), the

14

allegations in the text of it make clear that he was.  He was charged with simple battery under "O.C.G.A. Section 16-5-23" for "unlawfully[] caus[ing] physical harm to [two women] by striking them in the face."  The accusation says nothing about "physical contact of an insulting or provoking nature."  The same is true of the accusation underlying the April 2001 conviction.  It says nothing about "insulting or provoking" contact but charges Talamantes with simple battery under "O.C.G.A. Section 16-5-23" for "unlawfully[] caus[ing] physical harm to [a woman] by throwing books at her and leaving visible scratches on her arm."

The formal accusations on which Talamantes' two simple battery convictions were based "speak plainly," Gandy, 917 F.3d at 1340, to the fact that he was convicted of violating § 16-5-23(a)(2), not (a)(1).  Given the allegations in the two accusations, the (a)(2) crime is all that he could have been convicted of. See Lyman, 374 S.E.2d at 565 (holding that an accusation alleging that the defendant "intentionally cause[d] physical harm to the person of [the victim], by striking [her] on the head with a stack of paper bags" had charged only a violation of § 16-5-23(a)(2) and that it was error to instruct the jury that the defendant could be convicted of simple battery based on "offensive contact") (second and third brackets in original); Owens, 326 S.E.2d at 512–13 (finding reversible error where the indictment charged only that the defendant "intentionally cause[d] physical harm to [the victim] by grabbing her about the neck and choking her" but the court

15

instructed the jury on both physical harm battery under § 16-5-23(a)(2) and

insulting or provoking contact battery under § 16-5-23(a)(1) without giving a

limiting instruction).

Having decided that Talamantes was convicted under O.C.G.A. § 16-5-

23(a)(2), we must now decide whether the crime defined in that subsection is

categorically a crime of violence under 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C.

§ 16.  That is easy, because we have already held it is.  See Hernandez v. U.S.

Att'y Gen., 513 F.3d 1336, 1340 (11th Cir. 2008).  In doing so, we stressed that the

"simple battery conviction required more than simple physical contact with the

victim; it required intentionally causing physical harm to the victim through

physical contact."  Id.  And we emphasized that Georgia courts had interpreted

§ 16-5-23(a)(2) "as requiring actual physical contact that inflicts pain or injury."

Id.  Based on that reading of Georgia law and on some of our related precedent

interpreting other statutes, we concluded that a "conviction under § 16-5-23(a)(2)

constitutes a 'crime of violence.'"  Id.[1]  No Supreme Court decision has abrogated

---

[1] Hernandez cited and discussed United States v. Griffith, 455 F.3d 1339 (11th Cir. 2006), which had held that § 16-5-23(a)(1) is a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g), a statute that uses "essentially the same definition of a 'crime of violence' as in 18 U.S.C. § 16(a), the immigration statute at issue here."  Hernandez, 513 F.3d at 1340.  And dicta in Hernandez could be read as suggesting that, based on Griffith, § 16-5-23(a)(1) is a crime of violence for purposes of the INA.  Id.  Those parts of Hernandez are only dicta because that decision involved a conviction under § 16-5-23(a)(2), not (a)(1).  See, e.g., Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir. 2010) ("All statements that go beyond the facts of the case . . . are dicta.").

16

Hernandez's holding, and this Court has not done so en banc, so we are bound by it. See, e.g., United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009).

Not only that, but far from abrogating our Hernandez holding, Supreme Court precedent reinforces, supports, and even compels it. As we've mentioned, the Court has defined "physical force" as "force capable of causing physical pain or injury to another person." Curtis Johnson, 559 U.S. at 140. We held in Hernandez that § 16-5-23(a)(2) is a crime of violence because it requires "actual physical contact that inflicts pain or injury." 513 F.3d at 1340. That necessarily satisfies the Curtis Johnson definition. Cf. United States v. Vail-Bailon, 868 F.3d 1293, 1304 (11th Cir. 2017) (en banc) ("[Florida] felony battery, which includes the additional element that the touch or strike in fact cause significant physical injury, necessarily requires the use of force capable of causing pain or injury and therefore does so qualify [as a violent felony].").

For all of these reasons, Talamantes' convictions for simple battery under O.C.G.A. § 16-5-23(a)(2) are each categorically "crime[s] of violence" for purposes of 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16.

---

The continuing validity of Griffith may be up for debate in light of intervening Supreme Court precedent. See Curtis Johnson, 559 U.S. at 139–43. But the validity of Griffith goes beyond the scope of this case because Griffith involved a different federal statute, one that is not before us. Equally beside the present point is Hernandez's dicta about § 16-5-23(a)(1). Because Talamantes was charged and convicted solely under subsection (a)(2), that is the only part of Georgia's simple battery statute we are, or can be, reviewing.

17

### B.  Term of Imprisonment

To qualify under the INA's definition of "aggravated felony," it is not enough that a prior conviction be a "crime of violence."  It also must have resulted in the defendant being sentenced to a "term of imprisonment [of] at least one year." 8 U.S.C. § 1101(a)(43)(F); see also United States v. Guzman-Bera, 216 F.3d 1019, 1020 (11th Cir. 2000) (holding the statute refers to "the sentence actually imposed," not just the term of imprisonment the state court is authorized to impose).  Talamantes argues that neither of his two Georgia simple battery convictions resulted in a term of imprisonment, but instead resulted in sentences of only "straight probation."  See id. at 1021 (holding that "when a court does not order a period of incarceration and then suspend it, but instead imposes probation directly, the conviction is not an 'aggravated felony'").

The INA defines a "term of imprisonment" as including "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part."  8 U.S.C. § 1101(a)(48)(B) (emphasis added).  And a term of imprisonment includes "all parts of a sentence of imprisonment from which the sentencing court excuses the defendant, even if the court itself follows state-law usage and describes the excuse with a word other than 'suspend.'"  United States v. Ayala-Gomez, 255 F.3d 1314, 1319 (11th Cir. 2001).

18

Our precedent establishes that Talamantes was sentenced to a term of imprisonment for at least one year for purposes of § 1101(a)(43)(F), even if he was permitted to serve part or all of that sentence on probation. See id. In addition to the Ayala-Gomez decision, there is our later decision in United States v. Garza-Mendez, 735 F.3d 1284 (11th Cir. 2013), which is directly on point and forecloses Talamantes' contention.

Garza-Mendez involved a sentence enhancement that depended on the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43)(F). Id. at 1287. The defendant had a prior Georgia state conviction for what he conceded was a crime of violence but, like Talamantes, he contended that he had not been sentenced to a term of imprisonment of at least one year. Id. The trial court had sentenced Garza-Mendez "to 12 months of confinement in the Gwinnett County Comprehensive Correctional Complex, credited him 30 hours for time served, permitted the remainder of the sentence to be served on probation, and fined him $350.00." Id. at 1286 (quotation marks omitted). The sentence order stated that if he violated any of the terms of his probation, the court could revoke it and require him to complete the "sentence which was originally imposed." Id. at 1293 (appendix containing the sentence order); see also id. at 1289 ("A portion of a sentence to be served on probation nevertheless returns the convicted defendant to prison if probation is violated.").

19

We held in Garza-Mendez that it "could not be any clearer" the defendant was sentenced to 12 months of "confinement," and that "was the sentence imposed irrespective of any suspension of the confinement term" for probation. Id. at 1288 (quotation marks omitted). As a result, we concluded the defendant had been sentenced to a term of imprisonment of at least a year under § 1101(a)(43)(F). Garza-Mendez, 735 F.3d at 1289.

There is no daylight between the Georgia sentence imposed on the defendant in Garza-Mendez and the two Georgia sentences imposed on Talamantes. The sentencing form that the Georgia trial court used to sentence Garza-Mendez is substantively the same as the ones the Georgia trial courts used to sentence Talamantes. If, as we held, the sentence imposed on Garza-Mendez was for 12 months of "confinement," so were each of the sentences imposed on Talamantes. It could not be any clearer that what we held "could not be any clearer" in Garza-Mendez also could not be any clearer in this case: the defendant, there and here, was sentenced to a term of imprisonment of at least 12 months. Binding precedent binds, yet again.

Talamantes seeks to escape from the clutches of the Garza-Mendez decision by arguing that we should rely on the state trial judge's "clarification" orders, which were entered years after the fact by a judge who did not sentence him. Those orders purport to "sentence" Talamantes directly to probation — straight

20

probation instead of to a term of confinement suspended in whole or part in favor of probation.  No escape from Garza-Mendez is possible given that this Court rejected a materially identical argument in that very case.  The defendant there, like Talamantes here, presented a "clarification" order that stated he had been sentenced only to probation and not to a period of incarceration that was suspended.  Id. at 1286–87.  Our response to that argument was, to put it in the vernacular, "give us a break."

We rejected the invitation to take the "clarification" order in Garza-Mendez at face value, much less to be bound by it.  The "clarification" order in that case came five years after the sentence, id. at 1288; the ones in this case came 17 years after the sentence.  We also pointed out in Garza-Mendez that the judge who signed the "clarification" order had not been the sentencing judge, and she had done "nothing more than review [the defendant's] sentence," id., something we are quite capable of doing ourselves.  Precisely the same is true in this case.  Neither "clarification" order in this case was issued by the sentencing judge, and the judge who signed the orders did nothing more than review and interpret another judge's sentence order years later, which we can do ourselves.

It didn't help the defendant in Garza-Mendez that the "clarification order [was] flatly contrary to the sentencing order," id. at 1288 n.2, and was done only strategically to "influence [the defendant's] federal sentence," id. at 1288.  And it

21

doesn't help Talamantes that each so-called "clarification order" is a thinly veiled — or more like a buck naked — attempt to affect the result of a federal proceeding by altering the sentencing judge's sentence order more than a decade and a half after the sentence had been served.  See id.  That won't work.  As we explained in Garza-Mendez, we are not bound by a state judge's interpretation of a state court sentence order because we are dealing with federal law and federal statutes, not state law and state statutes.  Id. at 1289; see also Ayala-Gomez, 255 F.3d at 1319 ("Words in federal statutes reflect federal understandings, absent an explicit statement to the contrary, even if a state uses the word differently.").  If more explanation is needed, here it is:

> Because this is a federal case for unlawful re-entry into the United States following deportation and involves the interpretation of . . . federal statutes, a federal judge is in a better position to interpret the state-sentence order regarding its effect on [the defendant's] federal sentence under federal law than another state judge, who did not impose his sentence.  The original state sentence plainly speaks for itself but then must be interpreted under federal law in federal court concerning a federal crime.

Garza-Mendez, 735 F.3d at 1289 (citation omitted); see also Herrera, 811 F.3d at 1301 ("Because words in federal statutes reflect federal understandings, the statement of the Georgia court in its order of clarification that [the petitioner] was not sentenced to any confinement was due no weight in his immigration proceeding.") (quotation marks and citation omitted; alteration adopted).

22

In the Hail Mary part of his argument, Talamantes attempts to persuade us that instead of following our own precedent we should follow a BIA decision that purported to be an application of our precedent, Matter of Estrada, 26 I. & N. Dec. 749, 754–56 (B.I.A. 2016).  We are not persuaded to do that for several reasons. There is no reason we should follow an agency decision that says it is interpreting and applying our precedent, instead of just interpreting and applying our own precedent our own selves.  That is, after all, what we do day in and day out.  And even if we were inclined to have the BIA pinch hit for us, invoking its decision in Estrada is a swing and a miss for Talamantes.  In that case the BIA believed the state court's original sentence order was ambiguous and needed clarification.  See id.  Neither of the original sentence orders in Talamantes' two state court conviction cases is ambiguous.  The orders mean what they plainly say.

Finally, the BIA's Estrada decision is no longer even in the ball game anyway.  The Attorney General has directly overruled it.  See Matter of Thomas & Thompson, 27 I. & N. Dec. 674, 674 (Att'y Gen. 2019) ("I overrule the Board's decision[] in . . . Matter of Estrada.").  We will not follow an administrative agency's decision that has been overruled instead of our own precedent, which has not been overruled.

23

For all of these reasons, we conclude that Talamantes was sentenced to a term of imprisonment of at least one year for each of his two prior Georgia battery convictions.

## III.  CONCLUSION

Each of Talamantes' two Georgia convictions for simple battery was "a crime of violence . . . for which the term of imprisonment [was] at least one year," within the meaning of 8 U.S.C. § 1101(a)(43)(F).  That means he was convicted of not one, but two "aggravated felonies," as that term is defined in the INA.  Id. Two is more than enough to render him ineligible for cancellation of removal.

**PETITION DENIED.**