**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1878**

HERNAN HERNANDEZ-ZAVALA, a/k/a Herman Hernandez,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued:  September 15, 2015          Decided:  November 20, 2015

Before DUNCAN and FLOYD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Petition for review denied by published opinion.  Judge Duncan
wrote the opinion, in which Judge Floyd and Senior Judge
Hamilton joined.

**ARGUED**: William Robinson Heroy, GOODMAN, CARR PLLC, Charlotte,
North Carolina, for Petitioner.  Briena Lorraine Strippoli,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.  **ON BRIEF**: Joyce R. Branda, Acting Assistant
Attorney General, Civil Division, Blair T. O'Connor, Assistant
Director, Edward C. Durant, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

DUNCAN, Circuit Judge:

Hernan Hernandez-Zavala petitions for review of the Board of Immigration Appeal's ("BIA's") order affirming the Immigration Judge's ("IJ's") pretermission of Hernandez-Zavala's application for cancellation of removal. The BIA concluded that substantial evidence in the record indicated that Hernandez-Zavala had committed a "crime of domestic violence" as defined under section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(E)(i). Given this, the BIA found that Hernandez-Zavala was statutorily ineligible for cancellation of removal under INA § 240A(b), 8 U.S.C. § 1229b(b). For the reasons set forth below, we deny Hernandez-Zavala's petition.

I.

On March 8, 2012, Hernandez-Zavala, a native and citizen of Mexico, was charged with several misdemeanor offenses under North Carolina law. On March 21, 2012, he pleaded guilty in the District Court of Mecklenburg County, North Carolina, to the offense of assault with a deadly weapon in violation of N.C. Gen. Stat. § 14-33(c)(1). That statute provides as follows:

> Unless the conduct is covered under some other provision of law providing greater punishment, any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or

affray, he or she: (1) Inflicts serious injury upon another person or uses a deadly weapon . . . .

N.C. Gen. Stat. § 14-33(c)(1). This offense covers general assault and battery; it does not specifically cover incidents of domestic violence or require proof of a domestic relationship. In this case, it is undisputed that the victim of the assault was a woman Hernandez-Zavala described in his brief as his "partner," with whom he resides and shares a child. Petitioner's Br. at 4.

On March 9, 2012, the Department of Homeland Security ("DHS") served Hernandez-Zavala with a Notice to Appear. Because Hernandez-Zavala had been neither admitted nor paroled when he entered the United States, DHS charged him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. 1182(a)(6)(A)(i). Hernandez-Zavala conceded removability and applied for cancellation of removal.[1]

On February 4, 2013, DHS moved to pretermit Hernandez-Zavala's application, asserting that he had been convicted of a

---

[1] Pursuant to the INA, "[t]he Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien" satisfies certain criteria. 8 U.S.C. § 1229b(b)(1). One such criterion is that the noncitizen must not have been convicted of any of the criminal offenses enumerated in 8 U.S.C. § 1227(a)(2). See 8 U.S.C. § 1229b(b)(1)(C).

3

"crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i). Under this provision, "[a]ny alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable." 8 U.S.C. § 1227(a)(2)(E)(i). The same provision defines a "crime of domestic violence" as

> any crime of violence (as defined in section 16 of title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

Id. Asserting that Hernandez-Zavala had committed such a crime, DHS argued that he was therefore ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C). Hernandez-Zavala contested this assertion, claiming that his assault conviction does not constitute a "crime of domestic violence."

On March 18, 2013, the IJ granted DHS's motion to pretermit Hernandez-Zavala's application for cancellation of removal. Applying 8 U.S.C. § 1227(a)(2)(E)(i), the IJ first determined that the offense for which Hernandez-Zavala was convicted was categorically a "crime of violence" under 18 U.S.C. § 16, a finding that Hernandez-Zavala does not challenge on appeal.

4

Next, the IJ considered whether the North Carolina conviction was a "crime of domestic violence" under the INA. The IJ considered the offense of conviction as well as the underlying evidence and found that Hernandez-Zavala's conviction constituted a "crime of domestic violence" under both a modified categorical approach and a circumstance-specific approach. The IJ thus concluded that Hernandez-Zavala was statutorily ineligible for cancellation of removal.

On April 8, 2013, Hernandez-Zavala appealed the IJ's decision to the BIA, arguing that the IJ should not have considered any underlying evidence and that his conviction was not categorically a disqualifying offense under § 1227(a)(2)(E)(i). He did not contest the IJ's finding with respect to his domestic relationship with his victim. The BIA, adopting the circumstance-specific approach, concluded that the IJ properly found that Hernandez-Zavala's conviction constituted a "crime of domestic violence," rendering him statutorily ineligible for cancellation of removal. Hernandez-Zavala subsequently filed a petition for review with this court.

II.

The question presented in this case is a purely legal one: whether a conviction under a state law that does not have a domestic relationship as an element of the offense can

5

constitute a "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i). This is a matter of first impression in this circuit.

On appeal from the BIA, this court reviews legal questions de novo. Salem v. Holder, 647 F.3d 111, 115 (4th Cir. 2011). Where, as here, "the BIA and the immigration judge both issue decisions in a case, we review both decisions upon appeal." Kourouma v. Holder, 588 F.3d 234, 239-40 (4th Cir. 2009). This court has jurisdiction over this petition for review pursuant to INA § 242(a), 8 U.S.C. § 1252(a).

A.

Under 8 U.S.C. § 1227(a)(2)(E)(i), a "crime of domestic violence" has two requirements: it must be a "crime of violence" as defined by 18 U.S.C. § 16, and the crime must have been committed by an individual who was in a domestic relationship with the victim.

There is no dispute in this case that Hernandez-Zavala's North Carolina assault conviction constitutes a "crime of violence" under 18 U.S.C. § 16[2] or that Hernandez-Zavala was in a

_____

[2] A "crime of violence" is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or (Continued)

6

domestic relationship with his victim. The only question is whether the domestic relationship requirement in the statute must be an element of the underlying offense of conviction, triggering the categorical approach, or if it must merely be an attendant circumstance of the underlying conviction, triggering the circumstance-specific approach.

Hernandez-Zavala argues that the categorical approach should apply, while DHS argues that the circumstance-specific approach should apply. Under the categorical approach, one need only look to the statutory definition of the North Carolina offense to see if it contains the necessary elements of a "crime of domestic violence" under the INA. If the elements do not correspond, the inquiry stops there. Under the "circumstance-specific" approach, the court may also consider underlying evidence of the conviction to determine if a domestic relationship existed between Hernandez-Zavala and his victim.

## B.

To determine which approach should apply, we first consider the previous uses of, and the rationales behind, the categorical approach and the circumstance-specific approach. We then

---

property of another may be used in the course of committing the offense." 18 U.S.C. § 16.

7

address the specific "crime of domestic violence" provision at issue in this petition. We conclude that when assessing whether an underlying state conviction qualifies as a crime of domestic violence under the INA, the use of the circumstance-specific approach is proper in determining whether the requisite domestic relationship existed. Accordingly, we find that Hernandez-Zavala's conviction for assault with a deadly weapon against a woman with whom he was in a domestic relationship indeed constitutes a "crime of domestic violence," rendering him ineligible for cancellation of removal.

1.

Although the categorical approach had its beginnings in the criminal context, it has "a long pedigree" in immigration law. Moncrieffe v. Holder, 133 S. Ct. 1678, 1685 (2013). It is "[r]ooted in Congress' specification of conviction, not conduct, as the trigger for immigration consequences." Mellouli v. Lynch, 135 S. Ct. 1980, 1986 (2015).

Under the categorical approach, "we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the 'generic' federal definition of a corresponding" crime. Moncrieffe, 133 S. Ct. at 1684 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007))(quotation marks omitted). The Court clarified that "[b]y 'generic,' we mean the

8

offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." Id.

A generic federal offense and a state offense categorically match "only if a conviction of the state offense 'necessarily' involved . . . facts equating to [the] generic [federal offense]." Id. (quoting Shepard v. United States, 544 U.S. 13, 24 (2005))(quotation marks omitted)(alterations in original). Consequently, we make no factual inquiry into the particular circumstances of the conviction.[3] Mellouli, 135 S. Ct. at 1986. This approach is a practical one, designed to "promote[] judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." Moncrieffe, 133 S. Ct. at 1690.

---

[3] At times, the statute under which the defendant was convicted may be "divisible"--that is, it may "set[] out one or more elements of the offense in the alternative." Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). Under those circumstances, the sentencing court or the immigration judge may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Id. The sentencing court or the IJ then proceeds to the traditional categorical approach, and "compare[s] the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." Id.

Because "the dispute here does not concern any list of alternative elements," but rather concerns the total absence of an element from the state offense, the modified categorical approach "has no role to play in this case." Id. at 2285.

2.

When the federal statute does not describe a generic offense, but instead "refer[s] to the specific acts in which an offender engaged on a specific occasion," the circumstance-specific approach is appropriate. Nijhawan v. Holder, 557 U.S. 29, 34 (2009). Under this approach, while the congruence of the elements of the underlying offense and the offense described in the federal statute must be assessed using the categorical approach, courts may consider other evidence to see if the necessary attendant circumstances existed. See, e.g., id. at 38, 42-43.

In Nijhawan v. Holder, the Supreme Court for the first time applied the circumstance-specific approach in the immigration context. There, the Court considered another criminal offense enumerated in 8 U.S.C. § 1227(a)(2), that, like the one here, renders an individual ineligible for cancellation of removal. An "aggravated felony," defined elsewhere in the statute, includes "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The issue in Nijhawan was whether that definition's loss requirement should be interpreted as referring to a generic crime, triggering the categorical approach, or whether it should be interpreted as "referring to the specific way in which an offender committed the crime on a

10

specific occasion," triggering the "circumstance-specific" approach. Nijhawan, 557 U.S. at 34.

The Court found that the provision in question triggered the circumstance-specific approach in part because of its phrasing and in part because "to apply a categorical approach . . . would leave [the provision] with little, if any, meaningful application." Id. at 39. The Court emphasized that it had "found no widely applicable federal fraud statute that contains a relevant monetary loss threshold." Id. Further, at the time the law was passed, only eight states had statutes that would have had a relevant threshold if subparagraph (M)(i) were interpreted under the categorical approach. Id. at 40.

Concluding that Congress would not have designed subparagraph (M)(i) "to apply in so limited and so haphazard a manner," the Court held that the monetary threshold was not meant to be applied categorically. Instead, courts must look "to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." Id.

In Moncrieffe, the Court provided additional guidance for when courts could deviate from the categorical approach and use the circumstance-specific approach outlined in Nijhawan. The Court noted that the monetary threshold at issue in Nijhawan was "a limitation, written into the INA itself." Moncrieffe,

11

133 S. Ct. at 1691. By "[l]ocating this exception in the INA proper," Congress indicated "an intent to have the relevant facts found in immigration proceedings." Id. The Court contrasted this with situations in which "the INA incorporates other criminal statutes wholesale," in which case "it 'must refer to generic crimes,' to which the categorical approach applies." Id. (quoting Nijhawan, 557 U.S. at 37).

In United States v. Hayes, the Court considered a criminal statute with nearly identical statutory text to the provision before us. 555 U.S. 415 (2009). There, the Court interpreted the definition of a "misdemeanor crime of domestic violence" for the purposes of a firearm possession ban in the Gun Control Act of 1968, 18 U.S.C. § 922(g)(9). This term is defined in 18 U.S.C. § 921 as an offense that

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii). Although Hayes arose in the criminal context rather than in the immigration context, we find its reasoning instructive.

The Court considered whether, for the conviction to trigger the possession ban, the underlying conviction must include as an element the existence of a domestic relationship between the victim and the aggressor. Hayes, 555 U.S. at 418. The Court ultimately concluded that the relationship "need not be denominated an element of the predicate offense." Id. at 426.

Again, the Court looked to the language Congress used and to the purpose of the law. It reasoned that because Congress had used the singular form of the word "element" in the text, this "suggest[ed] that Congress intended to describe only one required element." Id. at 421. The Court found that "[t]he manner in which the offender acts, and the offender's relationship with the victim, are conceptually distinct attributes." Id. (citation and quotation marks omitted). The term "element" immediately precedes the use of force requirement, not the domestic relationship requirement. Thus, the Court ultimately concluded that, "[h]ad Congress meant to make the latter as well as the former an element of the predicate offense, it likely would have used the plural 'elements,' as it has done in other offense-defining provisions." Id. at 421-22.

Additionally, the Supreme Court noted that at the time the statute was passed, "only about one-third of the States had criminal statutes that specifically proscribed domestic

violence." Id. at 427. The Court further found that even in states that did have laws specifically against domestic violence, "domestic abuses were (and are) routinely prosecuted under generally applicable assault or battery laws." Id. Therefore, to hold that the categorical approach should apply would "would frustrate Congress' manifest purpose." Id.

C.

Because of the statutory structure, the Supreme Court's holding in Hayes, and practical considerations, we conclude that the circumstance-specific approach should apply in this case.

First, just as the monetary threshold requirement in Nijhawan was "a limitation[] written into the INA itself," Moncrieffe, 133 S. Ct. at 1691, so too is the domestic relationship component here. This provision of the INA incorporated by reference the definition of the generic "crime of violence" under 18 U.S.C. § 16, but it did not do so "wholesale." Id. Rather, it limited deportation consequences to a certain class of offenders. Under this provision, a crime of violence is a deportable offense only when "committed by" someone in a domestic relationship with the victim. 8 U.S.C. § 1227(a)(2)(E)(i). Further, as the Court has previously remarked, when Congress "[l]ocat[es] [an] exception in the INA proper," it indicates its "intent to have the relevant facts

14

found in immigration proceedings." Moncrieffe, 133 S. Ct. at 1691.

Second, we find the Supreme Court's interpretation of the nearly identical statutory text in Hayes to be instructive. Hernandez-Zavala primarily relies on one distinction between the statute at issue in Hayes and the relevant statute in his case: "the use of the word 'element.'" Petitioner's Br. at 16.

He argues that the conclusion in Hayes hinged on Congress's use of the singular form of "element." Therefore, in his view, the absence of the word "element" from § 1227(a)(2)(E)(i) should result in the opposite conclusion here. But the word "element" does appear in § 1227(a)(2)(E)(i): it is incorporated by reference in the definition of "crime of violence." See 18 U.S.C. § 16 (defining "crime of violence" to mean "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (emphasis added)). It is thus even more clear in the INA than in the statute at issue in Hayes that the term "element" applies only to the use of force requirement.

Finally, the practical considerations described in Hayes support the conclusion that Congress did not intend to require the domestic relationship component to be an element of the underlying offense. Congress passed the INA's "crime of domestic violence" provision in 1996, the same year it passed

15

§ 922(g)(9), the statute at issue in Hayes. Just as in Hayes, to construe this statute as requiring the domestic relationship to be an element of the underlying offense "would frustrate Congress' manifest purpose," given that the law "would have been 'a dead letter' in some two-thirds of the States from the very moment of its enactment." Hayes, 555 U.S. at 427.

The practical considerations listed by this court in Prudencio v. Holder also weigh in favor of the circumstance-specific approach. 669 F.3d 472 (4th Cir. 2012). In Prudencio, which concerned the applicability of the circumstance-specific approach to the phrase "crime involving moral turpitude," we observed that the monetary threshold criterion at issue in Nijhawan is an "objective" one. The determination of amount of loss "requires no interpretation whatsoever," with an inquiry "involv[ing] only the inspection of a single threshold fact." Prudencio, 669 F.3d at 483. The phrase "crime involving moral turpitude," however, involves a determination that "could require evaluation of all the evidence in an underlying criminal case by an adjudicator wholly unfamiliar with those proceedings." Id. Thus, while the circumstance-specific approach was appropriate in Nijhawan, it was not appropriate in Prudencio.

Our "very real evidentiary concerns" in Prudencio surrounding such "unbridled evaluation" are not present in this

16

case.  Id.  The inquiry that must be made here--whether the noncitizen and the victim of the prior offense were in a domestic relationship--involves the inspection of a single threshold fact.  This determination will often be straightforward and objective, reducing fears that the adjudicator will have to conduct a "minitrial" to reach a conclusion.  As the Court noted in Hayes, "generally . . . it would entail no elaborate factfinding process . . . to determine whether the victim of a violent assault was the perpetrator's 'current or former spouse' or bore one of the other domestic relationships."  555 U.S. at 427 n.9 (citations omitted).

Our reasoning is in accord with our only sister circuit to have addressed this issue after the Supreme Court's decisions in Hayes and Nijhawan.  In Bianco v. Holder, the Fifth Circuit similarly concluded that the domestic relationship component in the INA's definition of a "crime of domestic violence" did not need to be an element of the underlying offense.  624 F.3d 265, 272 (5th Cir. 2010).

Although the Fifth Circuit gave "respectful consideration" to the Ninth Circuit's 2004 interpretation of this statute in Tokatly v. Ashcroft, 371 F.3d 613 (9th Cir. 2004), the court concluded that it must "view that court's analysis in light of two subsequent Supreme Court decisions that arguably opened the door to a new 'circumstance-specific' approach."  Id. at 270.

17

We agree.  Although the Ninth Circuit has continued to favorably cite Tokatly following Hayes and Nijhawan, see, e.g., Olivas-Motta v. Holder, 746 F.3d 907, 912 (9th Cir. 2013), we do not find Tokatly's reasoning persuasive given the Supreme Court's subsequent holdings.

Our conclusion today does not conflict with our previous assessment that Nijhawan does not "permit[] an unrestricted circumstance-specific inquiry in the absence of express guidance from Congress."  Prudencio, 669 F.3d at 483.  The domestic relationship requirement falls within the narrow category in which "Congress modified the generic crime . . . with a qualifying phrase that requires a fact-specific review."  Id. As the Fifth Circuit concluded in Bianco, "the categorical and modified categorical approaches remain the analysis in the areas of their traditional application, including a court's application of those approaches to identifying the elements of offenses for which aliens may be removed under Section 1227(a)(2)."  624 F.3d at 273.

## III.

In conclusion, we affirm the BIA's decision because we find that Hernandez-Zavala's conviction for assault with a deadly weapon, committed against someone with whom he had a domestic relationship, renders him ineligible for cancellation of removal

under 8 U.S.C. § 1229b(b).  For the reasons stated above, Hernandez-Zavala's petition for review is

DENIED.