# Matter of H. ESTRADA, Respondent

*Decided May 27, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In analyzing whether a conviction is for a crime of domestic violence under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2012), the circumstance-specific approach is properly applied to determine the domestic nature of the offense.

(2) Where the respondent's original sentence for his Georgia conviction was ambiguous as to whether he was sentenced to probation or a probated term of imprisonment, a clarification order issued by the sentencing judge to correct an obvious discrepancy in her original order will be given effect in determining whether the respondent was sentenced to a term of imprisonment of at least 1 year.

FOR RESPONDENT: David S. Kennedy, Jr., Esquire, Gainesville, Georgia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Bianca H. Brown, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, GUENDELSBERGER, and MALPHRUS, Board Members.

PAULEY, Board Member:

In a decision dated September 30, 2015, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of a crime of violence aggravated felony, and under section 237(a)(2)(E)(i), as an alien convicted of a crime of domestic violence. The Immigration Judge pretermitted the respondent's application for cancellation of removal under section 240A(a)(3) of the Act, 8 U.S.C. § 1229b(a)(3) (2012), based on his conviction for an aggravated felony. The respondent has appealed from that decision. The appeal will be dismissed in part and sustained in part, and the record will be remanded to the Immigration Judge for further proceedings.

The respondent is a native and citizen of Guatemala who adjusted his status to that of a lawful permanent resident on May 6, 1991. On May 7, 1999, he was convicted of simple battery in violation of section 16-5-23(a)(2) of the Georgia Code Annotated pursuant to a plea of guilty.

The Department of Homeland Security ("DHS") initiated these removal proceedings on the basis of the respondent's conviction.[1]

On appeal, the respondent argues that under the categorical approach, his conviction for simple battery is not for a crime of *domestic* violence because the Georgia Code does not specify that he was in a domestic relationship with the victim. He also contends that since his sentence was not to confinement for 1 year or more, his conviction is not for an aggravated felony under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2012).

## I. CRIME OF DOMESTIC VIOLENCE

We first consider whether the respondent's conviction was for a crime of domestic violence. The term "crime of domestic violence" in section 237(a)(2)(E)(i) of the Act means

> any crime of violence (as defined in section 16 of title 18, United States Code) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or who has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

A determination whether a conviction is for a crime of domestic violence necessarily begins with an elements-based approach, because a statute that lacks an element corresponding to a "crime of violence," as defined in 18 U.S.C. § 16 (2012), cannot be a crime of domestic violence. *See United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014). Under the precedent of the United States Court of Appeals for the Eleventh Circuit, in whose jurisdiction this case arises, simple battery in violation of section 16-5-23(a)(2) of the Georgia Code Annotated is a categorical crime of violence, which is defined in § 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force." *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1339−42 (11th Cir. 2008); *see also United States v. Yanes-Cruz*, 634 F. App'x 247 (11th Cir. 2015) (finding that battery under section 16-5-23.1(a) of the Georgia Code Annotated is a

---

[1] The respondent was also convicted of sexual battery in violation of section 16-6-22.1 of the Georgia Code Annotated on May 7, 1999. The DHS did not rely on that conviction as a basis for removability and does not argue that it is pertinent on appeal.

categorical crime of violence).  The respondent does not challenge the Immigration Judge's determination that he was convicted of a categorical crime of violence based on the elements necessary for such a conviction.

Although the respondent does argue that the domestic nature of his offense was not categorically established, the categorical approach does not necessarily apply to all aspects of the determination whether a conviction is for a crime of domestic violence.  The Supreme Court has found that there is a distinction between statutes that must be analyzed under the categorical approach and those that require a different approach because "words such as 'crime,' 'felony,' 'offense' and the like sometimes refer to a generic crime . . . and sometimes refer to the specific acts in which an offender engaged on a specific occasion."  *Nijhawan v. Holder*, 557 U.S. 29, 33−34 (2009) (citing *Chambers v. United States*, 555 U.S. 122, 125−26 (2009)).  If the statutory language refers directly to a generic crime, then the categorical approach applies, but if the statute contains qualifying language that references the specific circumstances in which a crime was committed, then a circumstance-specific analysis must be applied.  *Id.* at 37−38.

There is no uniformity among the circuits on the issue of the proper approach to be employed in analyzing whether an offense is a crime of domestic violence.  To our knowledge, the Eleventh Circuit has not addressed this matter.  However, the more recent and persuasive authority supports the Immigration Judge's conclusion that the question whether an alien has been convicted of a crime of domestic violence should be assessed pursuant to a circumstance-specific inquiry, which permits recourse to all probative evidence.  *See Hernandez-Zavala v. Lynch*, 806 F.3d 259, 266 (4th Cir. 2015) (holding that the circumstance-specific approach should apply in reviewing section 237(a)(2)(E)(i) of the Act); *Bianco v. Holder*, 624 F.3d 265, 272−73 (5th Cir. 2010) (holding that "a crime of domestic violence need not have as an element the domestic relation of the victim to the defendant," which "can be proven by evidence generally admissible for proof of facts in administrative proceedings"); *see also Matter of E. Velasquez*, 25 I&N Dec. 278, 280−81 n.1 (BIA 2010).  *But see Tokatly v. Ashcroft*, 371 F.3d 613 (9th Cir. 2004).

The Fourth Circuit's decision, which was rendered after the Immigration Judge's opinion in this case, relied on the Supreme Court's interpretation of "nearly identical statutory text" in the criminal context in *United States v. Hayes*, 555 U.S. 415 (2009), which it found "to be instructive."  *Hernandez-Zavala*, 806 F.3d at 266.  In *Hayes*, the Court held that the domestic nature of a conviction for a "misdemeanor crime of domestic violence" need not be an element of the offense and may, instead, be found by a factual inquiry.  *Hayes*, 555 U.S. at 426.  The Fourth Circuit found it significant that the Ninth Circuit's contrary conclusion in *Tokatly*

was rendered before the Supreme Court decided both *Hayes* and *Nijhawan*, which expressly determined that a circumstance-specific approach was appropriately applied to various provisions of the immigration statute. Consequently, the Fourth Circuit did "not find *Tokatly*'s reasoning persuasive given the Supreme Court's subsequent holdings." *Hernandez-Zavala*, 806 F.3d at 267; *accord Bianco*, 624 F.3d at 269−70.

A circumstance-specific inquiry into the domestic nature of an offense is a limited one and "is not an invitation to relitigate the conviction itself." *Nijhawan*, 557 U.S. at 42 (quoting the Government's brief). It "involves the inspection of a single threshold fact"—the relationship between the offender and the victim—which requires only a "straightforward and objective" determination by the adjudicator. *Hernandez-Zavala*, 806 F.3d at 267; *see also Hayes*, 555 U.S. at 427 n.9. This is an objective fact that can be readily ascertained by identifying the victim in question and his or her domestic relationship, if any, to the respondent. Such a limited assessment of the nature of the crime comports with due process and is fundamentally fair, because a respondent has two opportunities to contest the domestic nature of the offense—first during the criminal proceedings and again at the removal hearing itself. *See Nijhawan*, 557 U.S. at 42.

The respondent argues that the circumstance-specific approach cannot be applied to determine whether his conviction for simple battery was for a "crime of domestic violence" because a separate battery statute, section 16-5-23.1(f) of the Georgia Code Annotated, punishes the more serious offense of "family violence battery." We do not agree that the existence of a State statute expressly prohibiting domestic violence is dispositive as to whether a conviction is for a crime of domestic violence under section 237(a)(2)(E)(i) of the Act. This contention is based on the flawed assumption that the domestic nature of the crime must be described as an element of the underlying offense. Rather, the focus of the circumstance specific approach is on the factual circumstances in which the crime was committed. Additionally, there is no indication that domestic violence in Georgia is prosecuted only under section 16-5-23.1(f). As the Supreme Court has noted, domestic violence is routinely prosecuted under general assault and battery statutes, even in States with statutes that specifically proscribe domestic violence. *See Hayes*, 555 U.S. at 427; *see also Castleman*, 134 S. Ct. at 1411.

Section 237(a)(2)(E)(i) of the Act contemplates a variety of offenses that may constitute crimes of domestic violence under the appropriate circumstances. What these crimes have in common, beyond the element of force, is the domestic relationship between the offender and the victim. Congress passed the domestic violence provision in 1996 when two-thirds of the States did not have laws that specifically proscribed domestic

violence.  *Hayes*, 555 U.S. at 426; *see also Castleman*, 134 S. Ct. at 1413. To treat the domestic violence circumstance as requiring a categorical approach as to the domestic nature of the crime would frustrate the manifest purpose of the legislation by rendering it inapplicable in the clear majority of the States.  *See Hayes*, 555 U.S. at 426−27; *Hernandez-Zavala*, 806 F.3d at 267; *Bianco*, 624 F.3d at 272.  We are not persuaded that Congress would have intended this result.  *See Luna Torres v. Lynch*, No. 14-1096, 2016 WL 2903424, at *6 (U.S. May 19, 2016) (reaffirming the principle from *Nijhawan* and *Hayes* that the categorical approach should not be applied so as to produce the "haphazard" result of preventing the Act from applying to a significant majority of State offenses).  We therefore conclude that the circumstance-specific approach is properly applied in analyzing the domestic nature of a conviction to determine if it is for a crime of domestic violence.

Finally, the respondent argues that even if the circumstance-specific approach applies, the evidence is insufficient to establish the domestic nature of his battery conviction.  We disagree.

Under the circumstance-specific approach in immigration proceedings, all reliable evidence may be considered, including documents that comprise the formal "record of conviction."  *See Matter of Garza-Olivares*, 26 I&N Dec. 736, 742 n.4 (BIA 2016); *Matter of Babaisakov*, 24 I&N Dec. 306, 320−21 (BIA 2007); *see also Nijhawan*, 557 U.S. at 41−43; *Bianco*, 624 F.3d at 272−73 (stating that the Government may prove the domestic nature of an offense by "using the kind of evidence generally admissible before an immigration judge").  Such evidence may include police reports and records, provided that the information in the report is reliable.  *See Matter of Grijalva*, 19 I&N Dec. 713, 721−22 (BIA 1988) (holding that police reports are admissible in immigration proceedings and that their contents are properly considered absent a claim that the respondent's statements were made involuntarily or that information was obtained as the result of egregious police misconduct); *cf. Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1349−50 (11th Cir. 2010) (finding that, absent corroboration, police reports were not sufficient evidence to establish removability where the "arrest reports state the police officers' conclusions . . . rather than recording their observations of facts to show guilt").

Several documents in the record provide reliable evidence that the respondent and his victim were in a relationship covered by section 237(a)(2)(E)(i) of the Act.  Two separate incident reports document the actions giving rise to the respondent's simple battery conviction.  The first report names the respondent and his victim, listing the same address for both.  It details a statement the victim gave to the police, in which she identifies the respondent as her boyfriend.  A second report, entitled a

"Family Violence Incident Report," was prepared by the police, as required under Georgia law whenever an incident of family violence is investigated. *See* Ga. Code Ann. § 17-4-20.1(c) (West 1998). This report also states that the respondent and his victim shared the same address. In answer to the question of the "relationship of primary aggressor to victim(s)," the response selected is "lives in the same household or formerly lived in household." *See* Ga. Code Ann. § 16-5-23.1(f) (West 1998) (providing that a battery committed between persons "living or formerly living in the same household" constitutes the offense of "family violence battery"); *see also* Ga. Code Ann. § 16-5-23(f) (West 1998) (employing the same language in relation to the offense of simple battery). The individual identified as the victim in these reports is also named on the criminal charging document that was the basis of the respondent's guilty plea.

The respondent has offered no evidence to contest either the identity of the victim or her relationship to him. Furthermore, the evidence in the record demonstrates that the respondent's victim is "a person who is protected from [the respondent's] acts under the domestic or family violence laws of . . . any State" within the meaning of section 237(a)(2)(E)(i) of the Act. *See Matter of E. Velasquez*, 25 I&N Dec. at 280 n.1 (discussing the "broad class of victims" included in section 237(a)(2)(E)(i)). Considering the totality of the evidence, we agree with the Immigration Judge that the DHS has established the domestic nature of the respondent's offense by clear and convincing evidence and that the respondent is therefore removable under section 237(a)(2)(E)(i) based on his conviction for a crime of domestic violence.

## II. CRIME OF VIOLENCE AGGRAVATED FELONY

We must also decide whether the respondent's simple battery offense is an aggravated felony under section 101(a)(43)(F) of the Act, as a "crime of violence . . . for which the term of imprisonment [was] at least one year." Since we have determined that the respondent's conviction is for a "crime of violence" under governing circuit law, the remaining issue is whether he was sentenced to a term of imprisonment of at least 1 year.

The respondent's conviction record includes a sentencing document on a preprinted form that provides for only two possible sentences: imprisonment or imprisonment with some or all of the term being served on probation. The form order does not allow for the possibility of probation as a separate punishment without a corresponding probated term of imprisonment. The distinction between this straight probation and a probated term of imprisonment is critical in this case because the Eleventh Circuit has concluded that the phrase "term of imprisonment" encompasses

any amount of a prison or jail sentence that is "probated" under Georgia law. *See United States v. Ayala-Gomez*, 255 F.3d 1314, 1317−19 (11th Cir. 2001).

The sentencing judge filled out the form order by circling "Misdemeanor Sentence" and writing "12" in the field corresponding to the total number of "months in the State Penal System" to be served. In the same section, the judge wrote "On Probation" and crossed out the form language pertaining to the imposition of a probated sentence. The language of the form order and the judge's edits to that language make the meaning of the order unclear as to whether the respondent was sentenced to straight probation or a probated term of imprisonment. However, the same judge that presided over the respondent's sentencing hearing subsequently issued an "Order Clarifying Sentence." That order states in pertinent part:

> No portion of the probationary time was subject to any term or period of confinement whatsoever. This Court clarifies that the entire probationary sentence was meant to be straight probation, not a probated confinement sentence. The use of fill-in template sentencing sheets . . . would appear to indicate that Defendant was sentenced to a period of confinement that was later probated, but this is not the case.

The Immigration Judge found that the most reasonable interpretation of the sentencing order is that it imposes a 12-month probated term of imprisonment. He concluded that the clarifying order is not entitled to deference, citing *United States v. Garza-Mendez*, 735 F.3d 1284 (11th Cir. 2013). That case involved a clarification order issued by a State judge after the sentencing judge had ordered the defendant to serve 12 months of confinement. The Eleventh Circuit rejected the "subjective, interpretive clarification order," noting that it was obtained from a different judge, long after entry of the original State sentence, for the purpose of preventing enhancement of the defendant's sentence for unlawful reentry in Federal court. *Id.* at 1289. In particular, the court was troubled by the fact that the original order was clear with respect to the imposition of a 12-month sentence to confinement. *Id.* at 1288; *see also Herrera v. U.S. Att'y Gen.*, 811 F.3d 1298 (11th Cir. 2016) (concluding that an order purporting to clarify that the original sentence did not include "any confinement whatsoever" did not affect the initial order's unambiguous imposition of house arrest as a condition of probation, which constituted a "term of imprisonment" under the Act).

We do not read the Eleventh Circuit's decision in *Garza-Mendez* as rejecting all clarification orders, especially where the concerns raised by the court are not present. In this case, the sentencing judge entered the clarification order in an attempt to correct an obvious discrepancy that

exists on the face of her original order. As the judge who imposed the original sentence, she is in the best position to ascribe meaning to the otherwise ambiguous alterations she made on the preprinted form order. We therefore find it appropriate to give effect to the sentencing judge's clarification order.

Our interpretation of the clarification order is consistent with section 17-10-1(f) of the Georgia Code Annotated, which imposes strict time limits with respect to a sentencing court's ability to change or "modify" a sentence. *See also State v. Mohamed*, 416 S.E.2d 358, 358 (Ga. Ct. App. 1992) (holding that once the defendant's sentence had been served, the court lost jurisdiction over him and therefore lacked authority to modify the sentence). However, all courts in Georgia have the authority to correct defects in their records at any time. *See State v. Hart*, 587 S.E.2d 164, 166 (Ga. Ct. App. 2003) (stating that the court had the "inherent power to correct or conform an erroneous recording of [its] intended sentence"). This inherent power also includes the authority to correct discrepancies that arise from the use of preprinted sentencing forms, as was the situation here. *See Hopper v. Williams*, 234 S.E.2d 525, 526 (Ga. 1977). In this case, the sentencing judge had the authority to clarify the prior sentencing order to reflect her original intent. *See Rutland v. State*, 82 S.E. 293, 295 (Ga. Ct. App. 1914) ("The power of amending records so as to make them speak the truth is of course inherent in all courts of record . . . .").

According to the clarification order, the respondent was sentenced to probation for a period of 12 months, none of which was the result of a probated sentence of imprisonment. We therefore conclude that the respondent's simple battery conviction is not for an aggravated felony within the meaning of section 101(a)(43)(F) of the Act because he was not sentenced to a term of imprisonment of at least 1 year. Consequently, the conviction does not support a finding that the respondent is removable under section 237(a)(2)(A)(iii) of the Act or that he is statutorily ineligible for cancellation of removal pursuant to section 240A(a)(3) of the Act.

Accordingly, the appeal will be sustained with respect to the Immigration Judge's finding that the respondent is removable under section 237(a)(2)(A)(iii) of the Act as an alien convicted of an aggravated felony. The respondent's appeal will be dismissed with respect to his removability under section 237(a)(2)(E)(i) as an alien convicted of a crime of domestic violence. The record will be remanded to give the respondent an opportunity to seek relief from removal.

**ORDER:** The appeal is dismissed in part and sustained in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.