**NOT RECOMMENDED FOR PUBLICATION**
File Name:  18a0012n.06

**No. 17-3150**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SOFONIAS VERDUGO-MORALES, | ) | **FILED** |
| | ) | Jan 05, 2018 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON  PETITION  FOR  REVIEW |
| v. | ) | FROM  THE  UNITED  STATES |
| | ) | BOARD  OF  IMMIGRATION |
| JEFFREY B. SESSIONS III, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:  GILMAN, SUTTON, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.**  Petitioner Sofonias Verdugo-Morales entered the

United States without inspection in early 2001.  That same year, he pleaded guilty to a California

misdemeanor domestic violence charge arising from an incident involving his then-girlfriend,

now-wife.  Verdugo-Morales received a sentence of probation and suspended costs.  He and his

wife subsequently moved to Michigan, where they welcomed a child.  In 2013, the Department

of Homeland Security commenced removal proceedings against Verdugo-Morales.  Both an

Immigration Judge and the Board of Immigration Appeals determined that the 2001

misdemeanor plea precludes Verdugo-Morales from seeking cancellation of removal under the

Immigration and Nationality Act, rendering his removal virtually inevitable.  Although this result

strikes us as particularly harsh, we acknowledge that the law dictates it.  We therefore **AFFIRM**.

## I.  BACKGROUND

Verdugo-Morales left Mexico and entered the United States without inspection in January 2001.  In October of that year, he pleaded guilty to a misdemeanor violation of California Penal Code § 273.5 for an incident involving his then-girlfriend, with whom he lived at the time and to whom he is now married.  Verdugo-Morales received a sentence of probation with suspended costs of $300.  He and his partner subsequently moved from California to Michigan, where their son was born in July 2007.  The couple also shares two older children, who were born before 2001 and who remained in Mexico with Petitioner's mother-in-law.  Verdugo-Morales, who was the sole provider for his family, has been steadily employed since 2001, and he worked for the same restaurant in Michigan from 2005 until he was detained by Immigration and Customs Enforcement (ICE) in 2013.

In November 2013, ICE arrested Verdugo-Morales and the Department of Homeland Security placed him in removal proceedings.  He received a Notice to Appear deeming him removable under the Immigration and Nationality Act (INA).  Verdugo-Morales admitted all factual allegations and conceded the charge of removability.  He then applied for cancellation of removal, arguing that the hardship of removal weighed in favor of cancellation.

In July 2015, an Immigration Judge (IJ) denied Verdugo-Morales's request for cancellation of removal.  The IJ determined that Verdugo-Morales's misdemeanor plea under section 273.5(a) constituted a crime involving moral turpitude.  The IJ also determined that Verdugo-Morales's 2001 plea was a "crime of domestic violence" under the INA, *see* 8 U.S.C. § 1227(a)(2)(E)(i), which meant that Verdugo-Morales could not establish the continuous physical presence necessary for removal cancellation.  The IJ ordered that Verdugo-Morales's application for cancellation of removal be pretermitted.  Verdugo-Morales filed a timely appeal

to the Board of Immigration Appeals (BIA), which issued a separate decision rather than summarily affirming the IJ. The BIA applied the so-called "categorical approach" and, like the IJ, determined that the 2001 plea qualified as a crime of domestic violence under the INA. The BIA thus affirmed the IJ's conclusion that the 2001 misdemeanor plea rendered Verdugo-Morales ineligible for cancellation of removal. This appeal followed.

## II. ANALYSIS

### A. Jurisdiction

Jurisdiction exists to review this appeal. Although the INA contains some jurisdiction-stripping provisions, they do not apply to Verdugo-Morales. *See* 8 U.S.C. § 1252(a)(2)(A), (B), and (C) (providing that no court has jurisdiction to review final orders of removal for certain classes of individuals, but permitting review of orders of removal for individuals covered by § 1227(a)(2)(E)(ii)). In addition, the INA specifies that courts retain jurisdiction to review "constitutional questions or questions of law raised upon a petition for review filed with an appropriate court of appeals with this section." 8 U.S.C. § 1252(a)(2)(D). Verdugo-Morales raises both constitutional questions and questions of law, questions which this panel may consider. *Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009).

### B. Standard of Review

When the BIA issues a separate opinion after reviewing the decision of an IJ, the BIA's ruling is treated as the final agency determination. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). The BIA's legal determinations are subject to de novo review, but reviewing courts grant substantial deference to the BIA's interpretation of the INA and its accompanying regulations. *Id.* "No deference is given, however, to the BIA's interpretation of a state criminal statute; that issue is reviewed de novo." *Serrato-Soto*, 570 F.3d at 688; *see also Patel v.*

*Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005) (reviewing de novo the question of whether "a particular state conviction amounts to an aggravated felony" under the INA "because such a conclusion depends upon interpreting state statutes and federal statutes unrelated to immigration").

## C. The Appropriate Analytical Approach

A threshold inquiry guides this appeal: Which analytical framework should this panel employ to determine whether Verdugo-Morales's 2001 misdemeanor plea constitutes a crime of domestic violence under the INA?

This inquiry is cabined in part by the Supreme Court's instruction that courts reviewing agency adjudications ordinarily may affirm only on the grounds relied on by the agency and may not affirm on alternate grounds not mentioned by the agency. *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962) ("*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself."). If the agency's stated "grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196 (1947). The BIA considered both the categorical and the modified categorical approaches before selecting and applying the categorical approach. Pursuant to *Chenery*, we may affirm only if the categorical approach provides an adequate and proper basis for Verdugo-Morales's removal. Because we agree that section 273.5(a) is a categorical match to the INA's crime of domestic violence provision, today's affirmance falls within the bounds of *Chenery*.[1]

---

[1] Because of the limitations set forth in *Chenery*, this panel could not base an affirmance on the circumstance-specific approach outlined by the Supreme Court in *United States v. Hayes*, 555 U.S. 415 (2009), and *Nijhawan v. Holder*, 557 U.S. 29 (2009). The BIA itself has elsewhere

Under the categorical approach, courts examine the state statute under which the individual subject to removal was convicted and compare it to the "generic" corresponding offense under the INA.[2] *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). "The prior conviction qualifies as an [INA] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (noting that the analysis turns "on whether the elements of the crime of conviction sufficiently match the elements" of the generic statutory offenses). If the state statute forming the basis of the conviction proscribes multiple types of conduct by "listing potential offense elements in the alternative," then it is deemed "divisible" and the court applies the "modified categorical approach. *Descamps*, 133 S. Ct. at 2283. The modified categorical approach permits courts to "consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. By looking at this limited group of documents, courts can discern "what crime, with what elements" formed the underlying conviction. *Mathis*, 136 S. Ct. at 2249. The court may then compare the particular crime of conviction with the relevant federal statute. *Id.*

Verdugo-Morales argues that the various domestic relationships listed in section 273.5(a) are alternative elements, making the statute divisible and subject to the modified categorical

---

endorsed the circumstance-specific approach for cases involving crimes of domestic violence. *See, e.g.*, *Matter of H. Estrada*, 26 I. & N. Dec. 749, 753 (B.I.A. 2016) ("We therefore conclude that the circumstance-specific approach is properly applied in analyzing the domestic nature of a conviction to determine if it is for a crime of domestic violence."). However, the BIA did not consider or invoke that approach in Verdugo-Morales's case, and so neither do we.

[2] Although born in the context of predicate offenses set forth in federal criminal statutes, this approach has been imported to analyzing predicate offenses under the INA. *Moncrieffe*, 569 U.S. at 190.

approach. The Government responds that the BIA rightly determined that the relationships are alternative means of satisfying one element, and that section 273.5(a) accordingly calls for the categorical approach. Thus, answering the threshold inquiry mentioned above—which analytical framework applies?—requires the panel to determine whether the domestic relationships listed in section 273.5(a) are alternative elements or alternative means.

In *Mathis*, the Supreme Court provided guidance on how to answer this question. *See* 136 S. Ct. at 2249. State law might conclusively declare that a state statute's alternatives are means or elements, as the Iowa Supreme Court did for the statute at issue in *Mathis*. *Id.* The text of the state statute may answer the question; if, for example, a statute's alternatives carry different punishments or must be charged and "so are elements." *Id.* And if neither state law nor the text provides an answer, "federal judges have another place to look: the record of a prior conviction itself." *Id.* A court may consult the "indictment and correlative jury instructions." *Id.* at 2257. If those documents "referenc[e] one alternative term to the exclusion of all others," it indicates "that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* By implication, then, charging documents and jury instructions that include *all* of the alternatives support the conclusion that the statute contains multiple means. With these tools in hand, we turn to section 273.5(a).

Verdugo-Morales concedes that he is aware of "no California appellate court opinion analyzing whether the classes of victims are alternative elements or merely alternative means." The Government points to *People v. Gutierrez*, 217 Cal. Rptr. 616 (Cal. Ct. App. 1985). In *Gutierrez*, the defendant was convicted of willfully causing a traumatic corporal injury to his wife. *Id.* at 948. On appeal, he argued that cohabitation was a necessary element of the offense, and that because he and his wife did not live together at the time of the incident, he could not be

guilty under section 273.5. *Id.* at 950. The California Court of Appeal explained that spouses, whether or not they live together, and "cohabitating nonspouses" constitute different categories of "protected classes" and that the statute did not require both marriage and cohabitation to be present "in *all* cases." *Id.* at 951. *Gutierrez* thus confirms that section 273.5's disjunctive list of various domestic relationships is just that: unconnected. By explaining that only one protected class must be present in any given case, *Gutierrez* lends some support to the Government's position that section 273.5(a) lists alternative means, not elements.

The statutory text operative at the time of Verdugo-Morales's 2001 misdemeanor plea does little to advance this analysis. It read:

> Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment.

Cal. Penal Code § 273.5(a) (West 2001). The offense is described in a single block; it does not have formatting (e.g., subparagraphs or indenting) or punctuation to denote or separate out discrete elements.[3] Rather, the disjunctive list of domestic relationships appears in the same single sentence and paragraph that calls for willful infliction of a corporal injury resulting in a traumatic condition. The most we can glean from the text is that the statute does not impose different punishments depending on the applicable domestic relationship, which weighs against a finding that the various domestic relationships are elements.

Verdugo-Morales's charging document sheds a bit more light on the situation. The misdemeanor complaint is for "domestic violence," and it includes the following charges:

---

[3] Then, as now, Section 273.5 included other subsections, which defined some of the statutory terms and set forth the punishment parameters for repeat offenders. *See* Cal. Penal Code § 273.5(b)-(h).

"Count 1 – Corporal Injury to Spouse and/or Roommate, Penal Code Section 17(b)(4)."[4] The

alternative listing of the domestic relationship in the count itself indicates that the various

relationships in the statutory text are alternative means for the single relational element. The

applicable jury instructions support the same conclusion. In 2001, they provided:

> In order to prove this crime, each of the following elements must be proved:
>
> 1. A person willfully inflicted bodily injury upon [[his] [her] [former] spouse] [a [former] cohabitant] [the [mother] [or] [father] of [his] [her] child]; and
>
> 2. The bodily injury resulted in a traumatic condition.

CALJIC 9.35, Cal. Jury Instr.--Crim. (West 2001). The most logical reading of these

instructions is that the single relational element can be satisfied by selecting and charging the

applicable bracketed terms.

Taken together, the California caselaw, statutory text, charging document, and jury

instructions support the BIA's conclusion and the Government's contention that section 273.5(a)

enumerates alternative means, not alternative elements. We now evaluate Verdugo-Morales's

2001 misdemeanor plea using the traditional categorical approach.

### D. Application of the Categorical Approach to Section 273.5(a)

The categorical approach entails a comparison of section 273.5(a) to the INA's definition

of a crime of domestic violence. If they match, then Verdugo-Morales's 2001 misdemeanor plea

constitutes a categorical crime of domestic violence for removal purposes. The INA defines a

crime of domestic violence as follows:

> For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18) against a person

---

[4] In 2001, California Penal Code § 17(b)(4) stated that a crime "punishable . . . by fine . . . is a misdemeanor . . . [w]hen the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor," as happened in Verdugo-Morales's case.

committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(a)(2)(E)(i). Verdugo-Morales does not contest that a violation of section 273.5(a) constitutes a crime of violence as defined by 18 U.S.C. § 16(a). At least one California appellate court has determined that the willful infliction of a traumatic condition requires the use of physical force. *See People v. Jackson*, 91 Cal. Rptr. 2d 805, 807 (Cal. Ct. App. 2000) ("[W]e conclude the section is not violated unless the corporal injury results from a direct application of force on the victim by the defendant."). On multiple occasions, the Ninth Circuit has also concluded that section 273.5(a) describes a qualifying crime of violence. *See, e.g.*, *Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1085 (9th Cir. 2010) ("Thus, following the interpretation of the elements of § 273.5(a) set forth in *Jackson*, we conclude that § 273.5(a) is categorically a crime of violence under 18 U.S.C. § 16(a)."); *United States v. Ayala-Nicanor*, 659 F.3d 744, 752 (9th Cir. 2011) (noting the absence of "California cases demonstrating that a defendant has been convicted under this statute for the non-violent use of force"). Instead, the question here is whether the domestic relationship element in section 273.5(a) matches the domestic relationship requirement in § 1227(a)(2)(E)(i).

In arguing that the California statute sweeps more broadly than its federal analog, Verdugo-Morales homes in on a difference in the statutory language regarding cohabitation. Specifically, Verdugo-Morales finds dispositive the INA's qualifier that the person must be cohabitating with the victim "as a spouse," a modifying phrase that does not appear in section 273.5(a). Indeed, at that time, section 273.5(b) expressly provided that "[h]olding oneself out to

be the husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation." He asserts that California defines cohabitants more broadly by not requiring sexual relations and encompassing "relationships that are much more casual and much less substantial" than federal law contemplates. The Government relies on *Carillo v. Holder*, 781 F.3d 1155, 1158 (9th Cir. 2015), in which the Ninth Circuit noted that California courts have found a spouse-like relationship implicit in the term cohabitant. The Government also distinguishes the cases on which Verdugo-Morales relies, noting that those regarding crimes involving moral turpitude do not control this analysis.

The Government's position has more support. Most persuasive is the Ninth Circuit's survey of California caselaw regarding the meaning of the term "cohabitant" in *Carillo*. 781 F.3d at 1158–59 (discussing *People v. Taylor*, 12 Cal. Rptr. 3d 693, 696 (Cal. Ct. App. 2004) ("The term cohabitant has been interpreted broadly to refer to those living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy."); *People v. Moore*, 52 Cal. Rptr. 2d 256, 262–63 (Cal. Ct. App. 1996); and *People v. Holifield*, 252 Cal.Rptr. 729, 733 (Cal. Ct. App. 1998) ("We do think that section 273.5 requires something more than a platonic, rooming-house arrangement.")). The Ninth Circuit relied on California courts' interpretation of the word "cohabitant" in the context of section 273.5(a) and found that its meaning was not materially different from the term as modified by the "as a spouse" language in the INA. *Carillo*, 781 F.3d at 1158.

Neither California courts nor the Ninth Circuit have cabined their interpretation of "cohabitant" under section 273.5(a) based on the provision in section 273.5(b) that specifies that cohabitation does not require "[h]olding oneself out to be the husband or wife" of the other person. Rather than putting undue weight on the terminology used by the cohabitants

-10-

themselves, California courts have evaluated the nature of the domestic relationship. *See, e.g.*, *Taylor*, 12 Cal. Rptr. 3d at 696–97 (considering the stability and permanency of a relationship that triggered a section 273.5(a) charge); *Moore*, 52 Cal. Rptr. 2d at 263–64 (discussing where the defendant kept his things, where he had his mail delivered, and whether he had sexual relationships with other women). California caselaw therefore supports reading "cohabitant" to mean the same thing in both statutes, and the lack of the words "as a spouse" in section 273.5(a) does not mean that California's statute encompasses "more conduct than the generic offense" listed in § 1227(a)(2)(E)(i). *Mathis*, 136 S. Ct. at 2248.

In addition, the catchall language in § 1227(a)(2)(E)(i) covers all of the domestic relationships set forth in section 273.5.[5] The INA specifically includes those victims who are "similarly situated" to a spouse, which aligns with California courts' construal of the term "cohabitant." *See Carillo*, 781 F.3d at 1159 ("On that basis alone, the match is categorical."). The INA also adopts the domestic violence protections "of the United States or any State, Indian tribal government, or unit of local government." § 1227(a)(2)(E)(i). Again, as noted in *Carillo*, this "inclusionary provision . . . must be given effect." 781 F.3d at 1159. By invoking domestic relations as defined by California, this provision sweeps at least as broadly as the domestic relationships described in section 273.5.

In summary, both § 1227(a)(2)(E)(i) and section 273.5(a) require a crime of violence against someone in a qualifying domestic relationship. Although the two statutes employ somewhat different language to describe which domestic relationships are covered, California courts' interpretation of section 273.5(a) and the catchall language in the INA confirm that the former does not encompass more conduct that the latter. A violation of section 273.5(a) is a

---

[5] Verdugo-Morales asserts that this catchall language is unconstitutionally vague. For the reasons set forth in Part II.E, *infra*, we reject that argument.

categorical crime of domestic violence under § 1227(a)(2)(E)(i), meaning that Verdugo-Morales's 2001 misdemeanor plea precludes him from seeking cancellation of removal.

### E. Constitutional Challenges to the Catchall Language in § 1227(a)(2)(E)(i)

Verdugo-Morales also seeks reversal on the grounds that the catchall language in the INA's definition of a crime of domestic violence is unconstitutionally vague. The catchall language includes crimes of violence if committed

> by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(a)(2)(E)(i). Verdugo-Morales frames these lines as containing two residual clauses, one for individuals "similarly situated to a spouse" under the laws of the jurisdiction and one for individuals covered by the other governmental units' domestic violence laws. He relies on this court's decision in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), to argue that the INA, although civil, may be subject to void-for-vagueness challenges. He then invokes both *Shuti* and *Johnson v. United States*, 135 S. Ct. 2551 (2015), for the proposition that these portions of § 1227(a)(2)(E)(i) are unconstitutionally vague.

This circuit has held that offenses listed in § 1227 that incorporate the "crime of violence" definition as set forth in 18 U.S.C § 16 may be subject to void-for-vagueness challenges. *See Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016) ("[B]ecause deportation strips a non-citizen of his rights, statutes that impose this penalty are subject to vagueness challenges under the Fifth Amendment."). The Ninth Circuit reached the same conclusion in a case that is now pending before the Supreme Court. *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted*, 137 S. Ct. 31 (2016). The Government argues against relying on *Shuti* until the

Supreme Court issues a decision in *Dimaya*. But because the language Verdugo-Morales challenges is not impermissibly vague, we see no reason to await the Supreme Court's decision in *Dimaya.*

A law is impermissibly vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [if it is] so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556 (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)). In *Johnson*, the Supreme Court found the Armed Career Criminal Act's residual clause—which covered any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)—irretrievably vague for two primary reasons. First, it connected "a judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Johnson*, 135 S. Ct. at 2558. Second, the clause created "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* These characteristics were incompatible with the mechanics of the categorical approach, which instructs courts to assess predicate offenses in terms of legal definitions, not factual particulars. *Id.* at 2562. In *Shuti*, the Sixth Circuit extended *Johnson*'s logic to the INA's residual definition of crime of violence, 8 U.S.C. § 1101(a)(43)(F). 828 F.3d at 446 ("The text of the immigration code at once compels a categorical approach to prior convictions and an imprecise analysis of possible risk.").

Verdugo-Morales analogizes the catchall language in § 1227(a)(2)(E)(i) to the residual clauses invalidated by *Johnson* and *Shuti*. He notes that this provision, too, is preceded by a prefatory list of specific examples and is subject to the categorical approach. He then argues that by referring to the "domestic or family violence laws" of other sovereigns, the INA goes beyond the categorical elements-matching process and "creates a confusing feedback loop of never-

ending analysis." The Government counters that this broad incorporation of state and local laws reflects a deliberate attempt by Congress to make the INA's domestic violence definition coextensive with fluctuating state laws. The Government also notes that this statutory scheme has not created widespread confusion, which indicates that any purported vagueness has not impeded implementation.

The catchall language in § 1227(a)(2)(E)(i) first protects victims "similarly situated to a spouse" under the laws of a jurisdiction. Just as the meaning of cohabitating "as a spouse" is understandable and has been reasonably interpreted by state and federal courts, *see supra* Part II.D, this language provides fair notice of the covered domestic relationships. This language is also clearly limited to the laws of the specific jurisdiction "where the offense occurs," thereby enabling individuals to identify the applicable domestic relationships.

The catchall language next incorporates domestic relationships as defined by "the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government." The meaning of this provision is also readily discernible: the INA includes any domestic relationship that one of the enumerated governmental entities has defined. The Supreme Court has implicitly sanctioned similar language in a different part of the INA. *See Torres v. Lynch*, 136 S. Ct. 1619 (2016) (considering the INA's definition of an "aggravated felony," 8 U.S.C. § 1101(a)(43), which has a catchall provision covering offenses "in violation of Federal or State law"). Although *Torres* did not involve a void-for-vagueness challenge to this particular language, the Supreme Court considered the implications of this broad incorporation of state law and did not take issue with the INA's reliance on the laws of other governmental units.

The catchall language in § 1227(a)(2)(E)(i) is broad, but it does not invite arbitrary application or give rise to judicial guesswork, and is therefore not impermissibly vague.

## III. CONCLUSION

The necessarily technical analysis above obscures the concerning fact of Verdugo-Morales's removal. California prosecutors deemed Verdugo-Morales's January 2001 infraction insubstantial enough to charge as a misdemeanor carrying only a de minimis punishment. This same misdemeanor plea now exacts an exponentially greater price: deportation. We find the disparity between these results hard to swallow, especially because removal will separate Verdugo-Morales from his wife, son, and the productive life they have known for nearly seventeen years. This result is harsh, but it is what the law instructs us to do. We are constrained to **AFFIRM** the BIA's decision.