[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12122

Non-Argument Calendar

_____

JUNJUN XIE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-268-778

_____

Before JORDAN, NEWSOM, and BLACK, Circuit Judges.

PER CURIAM:

Junjun Xie, a Chinese national proceeding *pro se*, seeks review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) denial of his counseled application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). He contends substantial evidence compels a finding he suffered past persecution because he was detained for fifteen days, regularly beaten, and effectively prohibited from practicing his religion with an underground Christian house church.[1] He also asserts substantial evidence compels a finding he had a well-founded fear of future persecution,

---

[1] Xie also asserts the IJ's adverse credibility and corroboration determinations are not supported by substantial evidence. The BIA stated it did not consider the IJ's credibility determination and it did not adopt the IJ's corroboration determination or discuss corroboration. Thus, this issue is not properly before us. *See Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (stating we exclusively review the final BIA determination unless the BIA expressly adopts the IJ's decision or relies upon its reasoning, in which case we review the adopted or relied-upon portions of the IJ's opinion and any part of the BIA determination where the BIA rendered its own opinion and reasoning); *N.L.R.B. v. U.S. Postal Serv.*, 526 F.3d 729, 732 n.2 (11th Cir. 2008) (explaining in deciding whether to uphold a BIA determination, we are limited to the grounds the BIA relied upon).

which qualified him for asylum and withholding of removal. Finally, he contends substantial evidence compels a finding he would more likely than not be tortured upon return to China. After review,[2] we grant his petition in part and deny it in part.

## I. DISCUSSION

### A. Past Persecution

The Attorney General may grant asylum to a non-citizen who meets the Immigration and Nationality Act's definition of a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee includes a person who is (1) outside the country of his nationality, (2) unwilling to return to that country, and (3) unable to avail himself of its protection (4) because of persecution or a well-founded fear of persecution on account of his religion. 8 U.S.C. § 1101(a)(42)(A).

"Persecution" is not statutorily defined. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008). We have held persecution is an extreme concept that is evaluated by considering the cumulative impact of the harms suffered by the petitioner. *Id.*

---

[2] We review agency factual findings for substantial evidence. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Under this deferential standard of review, we view the evidence in the light most favorable to the agency's decision, draw all reasonable inferences in favor of that decision, and must affirm the decision if it is supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). We cannot reverse a decision unless the evidence compels a contrary finding. *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009).

4                          Opinion of the Court                    21-12122

Economic deprivation that falls short of depriving a person of any means to earn a living does not constitute persecution. *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1292-93 (11th Cir. 2021). While an injury is not required, minor beatings and brief detentions do not amount to persecution. *De Santamaria*, 525 F.3d at 1008. More substantial beatings and detentions can, however, constitute persecution. *See Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1217 (11th Cir. 2007); *Ruiz v. Gonzales*, 479 F.3d 762, 764, 766 (11th Cir. 2007).

In *Shi*, we held the record compelled a finding that Shi, a member of a Christian group led by his father, was persecuted in China. *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1236 (11th Cir. 2013). Several factors weighed in favor of our holding. Shi's alleged persecution began with police interrupting a church service, which they called an illegal meeting, and ended with police attempting to coerce Shi to never attend church again. *Id.* The police confiscated the group's bibles. *Id.* at 1237. They detained Shi for seven days, during which they interrogated him twice, slapped his face, kicked his chair out from underneath him, and threatened to beat him with a baton. *Id.* The authorities applied pressure to suppress Shi's religious practice: they became angry when he did not answer questions, called him brainwashed, and handcuffed him to an iron bar outside overnight in the rain. *Id.* He developed a high fever and did not recover for two days. *Id.* Shi was interrogated about the membership and leadership of his church. *Id.* at 1238. We have also held authorities effectively forcing people to practice religion

underground to avoid punishment is persecution. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1354 (11th Cir. 2009).

Taking Xie's testimony as credible, as the BIA did, substantial evidence compels a finding that Chinese authorities persecuted him in the past. This case is analogous to *Shi*, where the record compelled a similar finding, although Xie's persecution was more severe in some ways and less severe in others. *See Shi*, 707 F.3d at 1236-38. Like in *Shi*, Xie was attending a gathering of a Christian house church in Fujian province, China, when police interrupted, called the meeting an illegal gathering, arrested the participants, and interrogated Xie about other members. Xie was detained for 15 days, more than a week longer than Shi. Xie was beaten more often and more severely in prison than Shi. Xie testified other prisoners assaulted him about daily or twice a day—although they did not apply much force when beating him and sometimes attacked him for his food, which was scarce, rather than at the signal of the guards—while police slapped Shi, kicked his chair out from underneath him, and threatened to beat him. Like in *Shi*, Xie's refusal to answer questions and repent angered the authorities.

Unlike in *Shi*, Xie was never handcuffed to an iron bar outside overnight, and he did not develop a fever. Xie did, however, suffer superficial wounds, which his father described as covering his body, requiring a few days of rest and home treatment with a cream. Like in *Shi*, authorities tried to stop Xie from practicing Christianity, at least with his specific group, and the village committee required him to report to them on weekends, when the

church gatherings were held.  Unlike in *Shi*, this reporting require-ment was indefinite, and the committee beat him, asked him to confess, and made him clean.  Furthermore, although Xie did not testify he had to practice underground to avoid punishment and apparently joined an underground house church solely because his friend introduced him to that church, the record shows he stopped attending the underground house church gatherings in response to the government's actions.  He had to indefinitely report to the vil-lage committee at the time when the gatherings occurred, he was scared to continue attending the gatherings after his detention, and he feared he would not be able to practice Christianity upon return to China.  He could have attended a government-sponsored church, although the country reports stated China detained and abused even members of those churches, but he testified he did not want to attend a government church because they were under Communist Party control.  The evidence authorities detained Xie, caused prisoners to beat him, and suppressed his religious activity compels a finding he suffered past persecution.

Furthermore, Xie was fired after the public security agency told his manager he was in an evil cult.  He did not apply for other jobs, but he asked his family and friends to refer him to employers, and they reported that employers would not hire him because the police told everyone he was in an evil cult.  While the evidence concerning his employment would not compel a finding of perse-cution on its own, it does provide additional support for the con-clusion the authorities' other actions toward Xie compelled a

finding he was persecuted.  Thus, taking Xie's testimony as credible, the record compels a finding Xie was persecuted, and we grant the petition on this issue.

## B.  *Well-Founded Fear of Future Persecution*

When the BIA has not addressed an issue, we remand the issue to the BIA unless it is a purely legal one that would not benefit from the BIA's expertise.  *Talamantes-Enriquez v. U.S. Att'y Gen.*, 12 F.4th 1340, 1348-49 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1119 (2022).  If we hold a petitioner showed past persecution, we do not address the petitioner's argument he also showed a well-founded fear of future persecution, but instead remand the case to the BIA to consider the issue in light of the presumption created by the past persecution.  *Shi*, 707 F.3d at 1239.  Because we hold that substantial evidence compels a finding of past persecution, we remand the issue of whether Xie established a well-founded fear of persecution to the BIA to consider in the first instance.

## C.  *CAT Relief*

To establish eligibility for CAT relief, the applicant must show that he more likely than not would be tortured upon return to his country.  8 C.F.R. § 208.16(c)(2).  Considerations include (1) evidence of past torture, (2) evidence the applicant could relocate to a different part of his country where he is unlikely to be tortured, (3) evidence of flagrant human rights abuses within his country, and (4) other evidence of country conditions.  *Id.* (c)(3). Where the government is the persecutor, it is presumed that

internal relocation would not be reasonable.  *Id.* (b)(3)(ii).  Torture is any act that intentionally causes severe physical or mental suffering to obtain a confession, inflict punishment, intimidate, or for any discriminatory reason.  8 C.F.R. § 208.18(a)(1).  Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel punishment or suffering arising from lawful sanctions.  *Id.* (a)(2)-(3).

Substantial evidence supports the determination that Xie failed to show he would more likely than not be tortured upon return to China.  While the country condition evidence showed that China tortured people, including members of house churches, it also stated unregistered churches had more freedom than in the past in some places and some religious activity was at least nominally protected.  Xie's past suffering does not rise to the level of torture.  He testified that, while he was beaten daily or twice per day for half of month, the other prisoners did not apply much force and his resulting injuries were superficial.  Regarding his possible return to China, Xie introduced evidence the village committee threatened him with severe punishment, that authorities would arrest him, that he feared he would be tortured, and he was not allowed or able to go to a different part of China.  Xie's alleged past mistreatment does not rise to the level of torture, and the evidence does not compel a finding that China would impose substantially harsher sanctions on Xie upon return to China.  *See* § 208.18(a).

## II.  CONCLUSION

We deny Xie's petition for review in part because substantial evidence does not compel a finding Xie more likely than not would be tortured in China.  We grant Xie's petition for review in part because Xie's testimony and evidence, if credible and corroborated, compels a finding that Xie suffered past persecution.  On remand, the BIA should consider whether Xie has shown past persecution or a well-founded fear of future persecution after an analysis of the IJ's credibility and corroboration findings.[3]

**PETITION DENIED IN PART, GRANTED IN PART.**

---

[3] The BIA based its withholding of removal denial solely on Xie's inability to meet his burden of proof for asylum.  Thus, we also remand to the BIA to consider, in the first instance, whether Xie was entitled to withholding of removal in light of our conclusion that the evidence, if deemed credible, compels a finding of past persecution.